*In re* MARRIAGE OF DANNY AVERY, Petitioner-Appellee, and VIR-GINIA AVERY, Respondent-Appellant.

Fifth District No. 5—92—0482

Opinion filed November 1, 1993.

Patrick M. McCann, of McCann & Foley, of Murphysboro, for appellant.

Richard Kruger, of Kruger & Henry, of Metropolis, for appellee.

JUSTICE MAAG delivered the opinion of the court:

Respondent, Virginia Avery, appeals from an order entered by the circuit court of Johnson County on June 26, 1992, denying her petition to enforce terms with respect to increasing child support as con-

tained in a previous order of the court dated January 7, 1986. For the reasons that follow, we affirm in part and reverse and remand with directions.

A judgment of dissolution of marriage was entered on March 26, 1985, dissolving the bonds of matrimony between the parties. On July 19, 1985, the parties appeared before the circuit court on all remaining issues and entered into a marital settlement agreement. This agreement was reduced to writing by Danny's attorney and entered as an order of the court on January 7, 1986.

The order entered January 7, 1986, awarded Virginia the marital domicile of the parties and provided in pertinent part:

"C. *Child Support*:

(1) [Danny] shall pay to [Virginia] for the support of the child, Hope Amber Avery, the sum of $87.50 every two weeks. [Danny] shall commence his payment of child support beginning with his first pay period following July 19, 1985. Said child support of $87.50 every two weeks *shall continue until the present mortgage on the marital home is paid.*

\* \* \*

(2) Once the said mortgage on the marital home has been paid then [Danny] shall pay to [Virginia] the following child support for Hope Amber Avery:

\*\*\*

(B) In the event that John Avery ([Danny's] son by a prior marriage) has attained the age of 18, the child support shall be 20% of [Danny's] net pay as net pay is defined in the Illinois Marriage and Dissolution of Marriage Act.

\* \* \*

(4) That the child support set forth above in this agreement, along with the mortgage payments to be paid by [Danny] to the Goreville State Bank on the marital home in which the minor child of the parties resides, meets the guidelines for child support set forth in section 505 of the Illinois Marriage and Dissolution of Marriage Act." (Emphasis added.)

The following facts are not in dispute. At the time the court order of January 7, 1986, was entered, the payments being paid on the marital domicile to the Goreville State Bank were at the rate of $379.49 per month per the original mortgage signed by both parties on June 14, 1984. The original mortgage recites that the indebtedness is to be "paid in 86 monthly installments of $379.49 \*\*\* first installment due July 14, 1984 and each month thereafter until paid in full." If Danny

had made payments of $379.49 per month, the loan on the marital domicile would have been paid off in July 1991.

On January 1, 1988, Danny reduced the payments to the bank from $379.49 a month to $200 without informing Virginia. On June 26, 1991, Danny entered into an agreement entitled "Mortgage Extension and Modification Agreement" with the bank again without the knowledge of Virginia. The mortgage extension modification agreement provides that the indebtedness on the marital domicile is to be repaid in "96 bi-monthly payment [sic] of $109.01" and extended the date the marital domicile would be paid off to June 28, 1995.

On February 20, 1992, Virginia filed a petition to enforce the order dated January 7, 1986, and in particular sought to enforce paragraph (c)(2)(b) of that order increasing the cash amount of child support she receives to 20% of Danny's net income. A hearing on the petition to enforce was held on May 15, 1992. The only explanation Danny offered for his unilateral reduction of the amount paid monthly on the mortgage was the fact that things were economically "tight" and he had remarried. Danny testified that his new wife was unemployed and that they both had bills that needed his attention thus necessitating the reduction.

The trial court orally ruled at the close of the hearing and stated:

"In regards to the child support, the Order says $87.50 every two weeks until the present mortgage is paid. Now in retrospect, obviously, it would have been better to have put a cut off date in there. I suppose the parties should have capitulated [sic] when the mortgage was anticipated to have been paid. The document entitled Defendant's Exhibit 4, the mortgage extension, is an extension of the present mortgage, in my opinion, and the present mortgage is still pending. The note secured by the mortgage, I suppose, has been changed. The note executed by the mortgage itself is still in effect. This is not a petition to modify the child support, it's a petition to enforce the original agreement, the original Order. And as I read the original Order, as long as the present mortgage or once the present mortgage is paid, until the present mortgage is paid the child support is $87.50 every two weeks ***."

The order which is the subject of this appeal was entered on June 26, 1992. The order of June 26, 1992, provides in pertinent part:

"3. That paragraph 'c' of the order dated January 7, 1986 states as follows:

'Said child support of $87.50 every two weeks shall continue until the present mortgage on the marital home is paid.'

4. [Danny] unilaterally decreased his payments to the bank starting January 1, 1988.

5. That [Danny] entered into a mortgage extension agreement with the bank without [Virginia's] knowledge or consent in June, 1991.

6. That such mortgage extension agreement is the same as the words present mortgage [*sic*] as contained in paragraph 'c' of the order dated January 7, 1986, therefore, [Danny] is not required to increase his child support payments to 20% of his net income.

\* \* \*

B. That the mortgage extension agreement entered by [Danny] without the knowledge of [Virginia] is a continuation of the present mortgage as used in paragraph 'c' of the order dated January 7, 1986."

The sole issue presented for review is whether the trial court erred in finding that the mortgage extension and modification agreement is a continuation of the present mortgage as such term is used in paragraph (c) of the order of January 7, 1986.

On appeal Virginia argues that allowing Danny to unilaterally reduce the monthly payments on the mortgage is unfair, and she further advocates that the instant case should be decided in accordance with principles as contained in *In re Marriage of Chenoweth* (1985), 134 Ill. App. 3d 1015, 481 N.E.2d 765, and similar cases. In *Chenoweth* we prohibited the reduction of child support based upon the deliberate acts of the party seeking the reduction. Virginia requests that we reverse the trial court and remand with instructions to the trial court to increase Danny's child support to 20% of his net income from July 1991.

Danny argues that the payment of the mortgage indebtedness is a condition precedent to the automatic increase, and since the mortgage indebtedness has not been satisfied his obligation of child support to Virginia cannot be automatically increased. Danny asserts that Virginia has suffered no harm by the original arrangement or his unilateral modification by reducing and extending the payments. Further, although Danny has only been allowed to talk with his daughter on one occasion since the divorce in 1986, he continues faithfully to pay child support to Virginia plus the mortgage payments. Danny contends that had the parties wanted the child support to increase at a definite time, the parties could have expressly written a date certain in the judgment. Likewise, if the parties had wanted the child support increase to begin when the note was paid, as opposed to the mort-

gage, the parties could have expressly written it into the judgment. Lastly, Danny argues that absent contrary indications in the record, it is presumed that the decision of the trial court is correct. (*In re Estate of Friedman* (1984), 123 Ill. App. 3d 82, 462 N.E.2d 692.) We find Danny's arguments unpersuasive.

For purposes of determining the proper standard of review, the trial court's construction of the order of June 26, 1992, which provided for an automatic increase in child support to Virginia after the payment of the "present mortgage," addresses a matter of law rather than a finding of fact. (*Allen v. Board of Trustees of Belleville Area College District 522* (1986), 144 Ill. App. 3d 389, 494 N.E.2d 1168.) We may determine the correctness of the trial court's ruling on a question of law independent of the trial court's judgment. (*Arneson v. Board of Trustees* (1991), 210 Ill. App. 3d 844, 569 N.E.2d 252.) Our independent examination reveals that the trial court erred in finding that the mortgage extension and modification agreement is a continuation of the "present mortgage."

Although both parties failed to provide any relevant case law or statutory authority, under general statutory provisions concerning child support Danny cannot unilaterally reduce his obligation of child support even if the payment is to a third person or institution rather than his former spouse.

The Illinois Marriage and Dissolution of Marriage Act (Act) (750 ILCS 5/101 *et seq.* (West 1992) (formerly Ill. Rev. Stat. 1991, ch. 40, par. 101 *et seq.*)) provides that a court is required to determine the minimum amount of child support by following the guidelines as contained in section 505(1). (750 ILCS 5/505(1) (West 1992) (formerly Ill. Rev. Stat. 1991, ch. 40, par. 505(1)).) The guidelines must be applied in each case unless the court finds a reason, based upon relevant factors, for deviating from the guidelines. (750 ILCS 5/505(2) (West 1992) (formerly Ill. Rev. Stat. 1991, ch. 40, par. 505(2)).) It is not disputed by Danny or Virginia that the payment of the mortgage was, in fact, part of Danny's child support obligation. It is clear from the original order and the record before us that Danny's obligation of child support included $87.50 paid every two weeks to Virginia plus the payment of the mortgage. The monthly payment of $379.49 to the bank and the child support paid directly to Virginia brought Danny's obligation up to or in excess of the mandatory minimum guidelines.

The Act further requires:

> "Except as otherwise provided ***, the provisions of any judgment respecting maintenance or support may be modified only as to installments accruing subsequent to due notice by

the moving party of the filing of a motion for modification and only upon a showing of a substantial change in circumstances." 750 ILCS 5/510(a) (West 1992) (formerly Ill. Rev. Stat. 1991, ch. 40, par. 510(a)).

When Danny unilaterally reduced his payments to the bank on the mortgage, he was reducing the amount of child support he was paying, in violation of section 510(a). Just as Danny cannot unilaterally reduce his child support payments to Virginia, he cannot unilaterally reduce the payments to the bank which he acknowledges are in the nature of child support.

More importantly, in the Act our legislature specifically addressed the very issue before us. In order to determine net income for child support purposes, courts are instructed to total all income from all sources and subtract enumerated deductions, which include:

"(h) Expenditures for repayment of debts that represent reasonable and necessary expenses for the production of income, medical expenditures necessary to preserve life or health, reasonable expenditures for the benefit of the child and other parent, exclusive of gifts. The court shall reduce net income in determining the minimum amount of support to be ordered *only for the period that such payments are due* and shall enter an order containing provisions for its self-executing modification upon termination of such payment period." (Emphasis added.) 750 ILCS 5/505(3)(h) (West 1992) (formerly Ill. Rev. Stat. 1991, ch. 40, par. 505(3)(h)).

We believe that the payment of the mortgage on the marital domicile was a reasonable expenditure for the benefit of the parties' child and Virginia. In accordance with section 505(3)(h), the circuit court properly reduced Danny's net income in determining the child support payable directly to Virginia and included a provision in its order for a self-executing modification. The trial court premised the self-executing modification upon termination of the "present mortgage."

It is well established that "[i]f the language of a decree is broader than is required or permitted by law, it will be limited by construction so that its effect shall be such only as needed for the purposes of the case and in conformity with the law applicable thereto." *Midland Electric Coal Corp. v. County of Knox* (1953), 1 Ill. 2d 200, 224, 115 N.E.2d 275, 278.

Section 505(3)(h) limits the reduction of child support below the minimum statutory guidelines only for the period that such payments are due on the repayment of the debt, as distinguished from allowing the reduction of child support so long as there is a balance on the

debt. When the order of January 7, 1986, was entered, the period that the original mortgage payments were due ended July 1991. Thus, the trial court could only reduce Danny's obligation of child support to Virginia until July 1991. In other words, in order to comply with section 505(3)(h), "present mortgage" cannot be construed as including any extension or modification of payment. At the conclusion of the original repayment period, Danny's obligation of child support to Virginia was 20% of his net income pursuant to the order of January 7, 1986, and in accordance with section 505(3)(h) of the Act.

■■ Contrary to Danny's argument, there can be no dispute that Virginia has been harmed by Danny's unilateral acts. Had Danny paid the monthly mortgage payments at the original rate of $379.49, the marital domicile, which was awarded to Virginia, would have been free of all indebtedness to the bank as of July 1991. Further, Virginia would have automatically been entitled to 20% of Danny's net income as child support after that date. Because an obligation of child support must be in dollar amounts and not a percentage (750 ILCS 5/ 505(5) (West 1992) (formerly Ill. Rev. Stat. 1991, ch. 40, par. 505(5))), it would have been necessary to hold a hearing at the expiration of the payment period to determine the amount of support if the parties could not stipulate to the proper amount.

■ While a reviewing court is not required to consider contentions which are not essential to the determination of the case at hand (*Illinois Racing Board v. Hammond* (1977), 56 Ill. App. 3d 609, 371 N.E.2d 1189), we believe that there is a substantial public interest in issues concerning child support. Accordingly, we will address the claim by Danny that his obligation to pay child support is dependent upon visitation. Because this claim is of a type that is likely to recur (*Suhadolnik v. City of Springfield* (1989), 184 Ill. App. 3d 155, 540 N.E.2d 895), we will address it on the merits. As trial judges and attorneys who handle divorces can attest, the most popularly held belief and excuse of litigants concerning their obligation of child support is that it is not owed because visitation has not occurred or has been denied. We will reiterate once more that visitation and child support are not dependent and both are for the benefit of the children. Section 509 of the Act specifically provides that visitation and child support are independent and "[i]f a party fails to comply with a provision of a judgment, order or injunction, the obligation of the other party to make payments for support or maintenance or to permit visitation is not suspended." 750 ILCS 5/509 (West 1992) (formerly Ill. Rev. Stat. 1991, ch. 40, par. 509).

For the foregoing reasons, that portion of the circuit court's order of June 26, 1992, finding that the mortgage extension and modification agreement is a continuation of the "present mortgage," as such term is used in paragraph (c) of the order of January 7, 1986, is reversed, and this cause is remanded with directions to the trial court to hold a hearing to determine Danny's obligation of child support as of August 1991, that being 20% of his net income as defined by section 505 of the Act (750 ILCS 5/505 (West 1992) (formerly Ill. Rev. Stat. 1991, ch. 40, par. 505)), to state the support level in dollar amounts (750 ILCS 5/505(5) (West 1992) (formerly Ill. Rev. Stat. 1991, ch. 40, par. 505(5))), and to determine any arrearages for child support consistent with this order and to enter judgment thereon for Virginia.

The remainder of the order is affirmed.

Affirmed in part; reversed in part and remanded with directions.

CHAPMAN, P.J., and LEWIS, J., concur.