# Illinois Official Reports

## Appellate Court

---

*In re Marriage of Benson*, 2015 IL App (4th) 140682

---

| | |
|---|---|
| Appellate Court Caption | In re: MARRIAGE OF NANCY J. BENSON, Petitioner-Appellee, and DAVID W. BENSON, Respondent-Appellant. |
| District & No. | Fourth District<br>Docket No. 4-14-0682 |
| Filed | May 26, 2015 |
| Decision Under Review | Appeal from the Circuit Court of Macon County, No. 97-D-601; the Hon. James R. Coryell, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Leo W. Quigg, Jr. (argued), of Fuller & Quigg, of Decatur, for appellant.<br><br>Kurt B. Bickes (argued), of Bickes, Wilson & Moss, of Decatur, for appellee. |

Panel                    PRESIDING JUSTICE POPE delivered the judgment of the court, with opinion.
Justices Knecht and Harris concurred in the judgment and opinion.

**OPINION**

¶ 1        In June 2013, petitioner, Nancy J. Benson, filed a petition to enforce the terms of the trial court's April 1999 judgment of dissolution of marriage between Nancy and her former spouse, respondent, David W. Benson, which required David to pay a portion of his disability benefits to her. Following an April 2014 hearing, the court found David's disability benefits were in the nature of a disability pension and, as a result, Nancy was entitled to a fractional interest in those benefits.

¶ 2        David appeals, arguing, *inter alia*, the trial court erred in ruling Nancy was entitled to a portion of his disability benefits where the original dissolution judgment only awarded Nancy a portion of his retirement benefits. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4        On May 22, 1971, David and Nancy were married. On August 3, 1972, David began working for the City of Decatur fire department.

¶ 5        On April 16, 1999, the trial court entered a judgment dissolving the parties' marriage. At the time of the judgment, the primary marital asset was David's pension. The judgment provided, in pertinent part, the following:

          "[Nancy] is granted a one-half interest in [David's] retirement plan through the Decatur Fire Department and his ICMA retirement account. Transfer of said funds shall be accomplished through qualified [Illinois] domestic relations orders."

¶ 6        David continued to work as a firefighter until 2008, when he was injured during a call. David was carrying equipment back to the fire truck in the rain when his foot slipped. As he fell, his head and shoulder were driven into the ground, injuring his lower back.

¶ 7        On February 27, 2008, David began receiving disability benefits. At the time, David was 59 years old, had approximately 35 years of service, and was eligible to retire and draw a retirement pension. David continued to own and operate Benson Disposal, a family-owned garbage service he acquired from his father, until July 2012, when he sold it.

¶ 8        On June 11, 2013, Nancy filed a "Petition to Divide Pension Benefits." In her petition, Nancy alleged she believed David was receiving retirement benefits but David refused to confirm that. Nancy stated she had attempted to file a qualified Illinois domestic relations order (QILDRO) but had been unable to do so. Nancy requested an order directing David to pay her the appropriate share of his retirement benefits pursuant to the 1999 dissolution judgment as of the date he began receiving them.

¶ 9        On July 2, 2013, David filed his response to Nancy's petition. In his response, David denied he had any communication with Nancy regarding retirement benefits but admitted he was receiving disability benefits. David argued Nancy's petition should be dismissed because

the pension benefits had already been divided in the 1999 order and he was "not receiving retirement benefits but [was] receiving disability benefits."

¶ 10        On November 19, 2013, Nancy filed a petition to enforce the terms of the dissolution judgment. In her petition, Nancy alleged, *inter alia*, David had refused to sign a consent for the entry of a QILDRO, and Nancy also alleged by electing to receive a disability pension instead of a retirement pension, David had "refused, permanently, any share of his pension to [Nancy]."

¶ 11        During the April 15, 2014, hearing on Nancy's petitions, David was the only witness called to testify. David, then 65 years old, testified the parties did not have an agreed divorce, *i.e.*, the divorce came as a result of a trial and there was no marital settlement agreement. David testified there was never any agreement regarding retirement benefits and the trial court's ruling pertained only to his retirement pension and did not mention disability benefits. At the time of the hearing, David's monthly benefits were $4,569.27. David testified he receives his disability benefits tax-free. He admitted if he elected to take his retirement pension he would have to pay taxes on it. The disability benefits also included free health insurance for David and his current spouse. David testified he intended to continue to draw disability benefits as long as he is allowed. David testified he would also be eligible for full social security benefits at age 66.

¶ 12        David argued the dissolution judgment did not mention disability benefits and there was no assignment of disability benefits. In arguing against a retroactive award, David argued Nancy should have come to court and asked for an award earlier.

¶ 13        Nancy introduced plaintiff's exhibit No. 4, a letter from Cary J. Collins, the attorney for the Decatur Firefighters Pension Board, into evidence without objection. That letter referred to David's disability benefits as a "pension benefit." The letter also stated David was not required to convert his disability pension to "a regular retirement pension." Instead, converting to a regular retirement pension "is only an option which a firefighter may exercise." Nancy also introduced plaintiff's exhibit No. 5, a copy of a document entitled "Firefighter's Pension Plan Description," into evidence without objection. This document shows benefits through the pension plan include disability benefits. Nancy also introduced plaintiff's exhibit No. 9 into evidence as a demonstrative exhibit. It contained figures showing Nancy's share of David's pension would be 37.6% based on the number of years he worked and the time they were married. David did not object to the 37.6% figure.

¶ 14        Nancy argued David had no incentive to ever take his retirement pension in place of receiving disability benefits. According to Nancy, David's choice would effectively eliminate any marital property interest she had in David's retirement under the 1999 judgment. Nancy also requested an award of past-due disability payments dating to February 2008, *i.e.*, when David began receiving those payments. Nancy acknowledged her petition was filed six years after he started to draw disability, but she argued she "never had the ability to take [David] to court to get her share of this pension."

¶ 15        Following the hearing, the trial court found David's disability benefits were in the nature of a disability pension and, as a result, Nancy was entitled to a fractional interest in those benefits. The court awarded Nancy 37.6% of David's disability benefits dating back to 2008, when David first began receiving them, as well as 37.6% of David's monthly disability benefits going forward. The court found, although Nancy failed to seek enforcement of the 1999 judgment until 2013, she was still entitled to the benefits because David's obligation to make

those payments was already in existence as a result of the 1999 judgment and it had just gone unenforced. The court deferred entering specific dollar amounts to a later date.

¶ 16    On May 14, 2014, David filed a motion to reconsider, arguing the trial court erred in awarding Nancy a portion of his disability benefits where (1) disability benefits are not retirement benefits, and (2) the court's ruling did not state a basis for a retroactive award of David's benefits. Following a June 24, 2014, hearing, the trial court denied David's motion. The court then asked Nancy's attorney if an order had been prepared. Nancy's attorney responded as follows:

> "Yes, Judge. We have a stipulation between the parties as to how this order was arrived at.
>
> I will submit Plaintiff's Exhibit No. 1, which is a demonstrative statement of the benefits. My earlier petition indicated that I think it was 37.6 percent of the award would be her share.
>
> Here's Group Exhibit No. 2, which is another stipulation that we will enter in. Your Honor, this is the city of Decatur's record of [David's] payments received through the disability [from 2008]."

Those exhibits show David owed Nancy a past-due amount of $116,345.19, as well as $1,718.05 per month going forward.

¶ 17    In its July 10, 2014, written order, the trial court awarded Nancy a lump sum of $116,345.19 for "prior benefits due." The court also awarded Nancy 37.6% of David's monthly disability benefits as follows: "Currently, [David's] benefit is $4,569.27 per month, of which [Nancy] is due from [David] $1,718.05 per month for May and June, 2014 and thereafter, to be adjusted [to account] for increases received by [David]."

¶ 18    This appeal followed.

¶ 19                              II. ANALYSIS

¶ 20    On appeal, David argues the trial court erred in ruling Nancy was entitled to a portion of his disability benefits where those benefits are not retirement benefits and the 1999 dissolution judgment does not address disability benefits. We note David does not dispute the percentage or actual amounts awarded and instead argues none of his disability benefits should have been awarded to Nancy. David also contends the court erred in making a portion of Nancy's award retroactive. Finally, David maintains Nancy's claim was barred by *laches*. We will address each argument in turn.

¶ 21                          A. Standard of Review

¶ 22    As stated, this matter does not involve a marital settlement agreement between the parties. Instead, we are called upon to interpret the scope of the trial court's 1999 dissolution of marriage judgment, which was entered following a trial. We interpret judgments of the trial court on matters of law *de novo*. *In re Marriage of Avery*, 251 Ill. App. 3d 648, 652, 622 N.E.2d 1231, 1234 (1993). Further, we may affirm the trial court for any reason supported by the record, regardless of the particular basis relied upon by the trial court. *Akemann v. Quinn*, 2014 IL App (4th) 130867, ¶ 21, 17 N.E.3d 223.

¶ 23                              B. Scope of the Dissolution Judgment

¶ 24        "It is well settled that disability pensions are considered marital property." *In re Marriage of Sawicki*, 346 Ill. App. 3d 1107, 1115, 806 N.E.2d 701, 707 (2004) (citing *In re Marriage of Smith*, 84 Ill. App. 3d 446, 449, 405 N.E.2d 884, 887 (1980)). While the trial court's 1999 judgment of dissolution of marriage does not use the term "disability," it indisputably establishes Nancy's interest in David's "retirement plan" through the Decatur fire department and "ICMA" retirement account. The question is whether it was reasonable for the trial court to consider David's disability benefits as part of his retirement plan. For the reasons that follow, we find that it was.

¶ 25        The trial court's 1999 dissolution of marriage judgment awarded Nancy "a one-half interest in [David's] retirement plan." Plaintiff's exhibit No. 5, entitled "Firefighter's Pension Plan Description," clearly states benefits through the plan include both retirement and disability benefits for its participants. According to the exhibit, the plan provides for duty-related, non-duty-related, and occupational-disease disability benefits. The plan is governed by Illinois statutes.

¶ 26        The Illinois Pension Code (Pension Code) (40 ILCS 5/1-101 to 24-109 (West 2012)) provides a retirement pension (40 ILCS 5/4-109 (West 2012)) and, alternatively, a disability pension (40 ILCS 5/4-110, 4-111 (West 2012)) for eligible firefighters in municipalities with less than 500,000 residents (such as Macon County). These are both called "pensions." 40 ILCS 5/4-109(a), (b) (West 2012). They also are called "benefits." 40 ILCS 5/4-105d, 4-107, 4-112 (West 2012). Section 4-110 specifically provides disability benefits for a firefighter who becomes permanently disabled because of a duty-related injury. 40 ILCS 5/4-110 (West 2012) ("If a firefighter, as the result of *** injury incurred in or resulting from the performance of an act of duty ***, is found *** to be physically or mentally permanently disabled for service in the fire department, so as to render necessary his or her being placed on disability pension, the firefighter shall be entitled to a disability pension ***.").

¶ 27        While the Third District's decision in *In re Marriage of Schurtz*, 382 Ill. App. 3d 1123, 891 N.E.2d 415 (2008), is distinguishable in that the trial court there incorporated the parties' marital settlement agreement into its dissolution judgment, the appellate court's reasoning is nevertheless instructive here. In *Schurtz*, the ex-husband, John, was a Peoria firefighter who had approximately 30 years of service at the time of the divorce. *Schurtz*, 382 Ill. App. 3d at 1124, 891 N.E.2d at 416. In 1993, the trial court entered a judgment of dissolution of marriage, which incorporated the parties' marital settlement agreement. *Schurtz*, 382 Ill. App. 3d at 1124, 891 N.E.2d at 416. The agreement provided the parties would evenly divide John's " 'accrued retirement pension benefits as of September 16, 1993, if, as, and when received by him.' " *Schurtz*, 382 Ill. App. 3d at 1124, 891 N.E.2d at 416-17. The dissolution judgment did not address disability benefits.

¶ 28        In 2004, John, then 62 years old, was unable to work as a firefighter and began receiving $4,374 per month in disability benefits. *Schurtz*, 382 Ill. App. 3d at 1124, 891 N.E.2d at 417. John was eligible for retirement benefits at the time he began receiving disability benefits. *Schurtz*, 382 Ill. App. 3d at 1126, 891 N.E.2d at 418. In 2005, John's ex-wife, Lynette, filed a petition to enforce the dissolution judgment, arguing she was entitled to a portion of John's disability benefits. *Schurtz*, 382 Ill. App. 3d at 1124-25, 891 N.E.2d at 417.

¶ 29        During the hearing on Lynette's petition, John testified he did not intend to retire when he went on disability and would have returned to work if he were physically able. *Schurtz*, 382 Ill.

App. 3d at 1125, 891 N.E.2d at 417. However, John admitted he indicated "retired" on his City of Peoria "Change of Status" form as his reason for leaving. *Schurtz*, 382 Ill. App. 3d at 1125, 891 N.E.2d at 417. John testified he might elect to receive retirement benefits if it ended up being financially advantageous to him. *Schurtz*, 382 Ill. App. 3d at 1125, 891 N.E.2d at 417. However, John also admitted he could stay on disability forever. *Schurtz*, 382 Ill. App. 3d at 1125, 891 N.E.2d at 417.

¶ 30    The trial court found John's disability pension was a retirement pension and ordered him to pay $1,534.34 of his $4,374 monthly disability pension to Lynette. *Schurtz*, 382 Ill. App. 3d at 1125, 891 N.E.2d at 417. The court also ordered John to pay Lynette $41,980.08 for past-due amounts. *Schurtz*, 382 Ill. App. 3d at 1125, 891 N.E.2d at 417.

¶ 31    John appealed and the Third District affirmed. In reaching its decision, the appellate court reasoned:

> "When a disabled ex-husband is not yet eligible for retirement pay, a marital settlement agreement entitling the ex-wife to 'retirement' benefits should not be interpreted to grant her a share of her ex-husband's disability income. [Citations.] This interpretation is reasonable because the disability pay is meant to replace the disabled ex-husband's income, not act as retirement pay. [Citations.]
>
> However, when an ex-husband is entitled to receive retirement pay and is receiving disability income instead, a settlement agreement providing the ex-wife a portion of retirement benefits 'can be reasonably interpreted in only one way–the petitioner [should] be paid the percentage of what would be the normal retirement benefits, whether respondent [is] paid normal retirement benefits or disability retirement benefits.' " *Schurtz*, 382 Ill. App. 3d at 1126, 891 N.E.2d at 418 (quoting *In re Marriage of Marshall*, 166 Ill. App. 3d 954, 962, 520 N.E.2d 1214, 1219 (1988)).

¶ 32    In this case, David, like the ex-husband in *Schurtz*, was eligible to retire and receive retirement benefits at the time he began receiving disability benefits. While David testified, "they placed me on disability benefits," it is apparent from his testimony David opted for disability payments instead of retirement benefits. "A firefighter who is receiving a disability pension under this Article who has sufficient creditable service to qualify for a retirement pension and is age 50 or more may elect to permanently retire from the fire service at any time by submitting written application to the board." 40 ILCS 5/4-113(b) (West 2012). It is also evident from David's testimony he does not intend to cease drawing disability benefits in favor of receiving his retirement benefits. While David's payments are considered disability benefits, they are essentially retirement benefits. Like the ex-husband in *Schurtz*, David's disability benefits do not serve as income replacement, but as a substitute for his retirement pension. See *Schurtz*, 382 Ill. App. 3d at 1126, 891 N.E.2d at 418.

¶ 33    Under the circumstances presented in this case, the trial court did not err in finding Nancy was entitled to a share of David's disability benefits where the dissolution judgment awarded Nancy a portion of David's "retirement plan" and those benefits can reasonably be considered part of that plan.

¶ 34                      C. Division of David's Disability Benefits

¶ 35    David, citing the language in the trial court's 1999 dissolution of marriage judgment stating, "Transfer of said funds shall be accomplished through qualified domestic relations

orders," correctly points out disability benefits are not subject to division by a QILDRO. See 40 ILCS 5/1-119(b)(4) (West 2012) ("A QILDRO shall not apply to or affect the payment of any survivor's benefit, disability benefit, life insurance benefit, or health insurance benefit."). David then appears to argue his disability benefits are therefore not subject to division. We disagree.

¶ 36    Section 1-119 (40 ILCS 5/1-119(a)(6) (West 2012)) of the Pension Code provides a QILDRO is "an Illinois court order that creates or recognizes the existence of an alternate payee's right to receive all or a portion of a member's accrued benefits in a retirement system." A QILDRO requires a retirement system to divert to an alternate payee all or part of a benefit the system would otherwise have to pay to the member. 40 ILCS 5/1-119(b)(2) (West 2012). A QILDRO may divert the payment of a retirement benefit, a refund, or a death benefit. 40 ILCS 5/1-119(b)(1) (West 2012). However, as stated, it may not divert the payment of a disability benefit. 40 ILCS 5/1-119(b)(4) (West 2012).

¶ 37    Nancy concedes a QILDRO is not the appropriate mechanism with which to receive her portion of David's disability benefits. However, she correctly points out the trial court's order awarding her a fractional interest in those benefits did not direct their distribution by a QILDRO. Instead, the court ordered David to pay Nancy directly the stipulated percentage of his disability benefits after he receives them. Nothing in section 1-119 prohibited the court from doing so. See *In re Marriage of Menken*, 334 Ill. App. 3d 531, 534, 778 N.E.2d 281, 283 (2002) (citing *In re Marriage of Roehn*, 216 Ill. App. 3d 891, 895, 576 N.E.2d 560, 563 (1991) (in situations where a spouse is awarded a portion of the other spouse's benefits and a QILDRO cannot be entered, payments may be made "triangularly" from the retirement fund to the retiree and then from the retiree to the spouse)).

¶ 38                                        D. Award of Past-Due Benefits

¶ 39    David also argues the trial court erred in awarding Nancy a portion of his disability benefits retroactively. We disagree.

¶ 40    David mischaracterizes the trial court's $116,345.19 award to Nancy for past-due benefits as retroactive. "Property rights created by a judgment of dissolution become vested when the judgment is final, and a trial court lacks general jurisdiction to modify an order affecting these rights." *In re Marriage of Hubbard*, 215 Ill. App. 3d 113, 116, 574 N.E.2d 860, 862 (1991). As such, a court will lose jurisdiction over a matter 30 days after entry of a final and appealable order. *Hubbard*, 215 Ill. App. 3d at 116, 574 N.E.2d at 862; *Brickey v. Brickey*, 44 Ill. App. 3d 563, 564, 358 N.E.2d 406, 408 (1976). However, a court always maintains jurisdiction to enforce its judgments. *Brickey*, 44 Ill. App. 3d at 565, 258 N.E.2d at 408; *In re Marriage of Hall*, 404 Ill. App. 3d 160, 164, 935 N.E.2d 522, 526 (2010). While a court retains jurisdiction to enforce a dissolution judgment, it does not have jurisdiction to engraft new obligations onto a dissolution judgment or otherwise equitably modify it. *Hubbard*, 215 Ill. App. 3d at 117, 574 N.E.2d at 863.

¶ 41    In this case, the trial court did not modify the original 1999 dissolution judgment. Instead, it construed it to have always included disability benefits as part of David's retirement plan. In other words, the court was not creating a new property right in its 2014 order but rather enforcing a preexisting right under the 1999 judgment. The trial court did not err in awarding Nancy a portion of David's disability benefits dating to February 2008, when he first began receiving them.

¶ 42                                    E. Doctrine of *Laches*

¶ 43    Finally, David argues Nancy's claim is barred by the doctrine of *laches*. David contends the fact Nancy waited more than five years to raise a claim for his disability benefits should estop her from raising a claim at this late a date.

¶ 44    "The doctrine of *laches* is applied when a party's failure to timely assert a right has caused prejudice to the adverse party." (Internal quotation marks omitted.) *Ashley v. Pierson*, 339 Ill. App. 3d 733, 737, 791 N.E.2d 666, 670 (2003). "[A] party asserting *laches* must prove two fundamental elements: (1) lack of due diligence by the party asserting a claim; and (2) prejudice to the party asserting *laches*." *Ashley*, 339 Ill. App. 3d at 739, 791 N.E.2d at 671.

¶ 45    However, *laches* is an affirmative defense. *Hadley v. Ryan*, 345 Ill. App. 3d 297, 301, 803 N.E.2d 48, 52 (2003); 735 ILCS 5/2-613(d) (West 2012). Section 2-613(d) of the Code of Civil Procedure requires that affirmative defenses must be plainly set forth in the answer. *Harmon Insurance Agency, Inc. v. Thorson*, 226 Ill. App. 3d 1050, 1052, 590 N.E.2d 920, 921 (1992); 735 ILCS 5/2-613(d) (West 2012). Here, *laches* was not raised in David's answer to Nancy's petition. Instead, David's attorney mentioned it in passing during his closing argument, as follows:

> "My point is, is, well, that we have some waivers and some estoppel here, it is absolutely incorrect to argue [Nancy] had no ability to come into this court and ask for benefits at some point in the past. She was awarded whatever interest she has in my client's Decatur Fire Department and ICMA retirement accounts, had a judgment entered quite some time ago, and at any time after that date she could have come into court and asked for benefits. To now file a petition *** on November 19, 2013, and say, well, I didn't get around to asking for a QILDRO, I didn't get around to asking for benefits, but now I want them retroactive to the date that he started receiving disability benefits. I disagree with that. *I think there is laches*. I think there is estoppel. I believe that if you [rule Nancy should be awarded a portion of David's benefits, then] nothing should commence prior to the date of the filing of [Nancy's] petition." (Emphasis added.)

¶ 46    Thereafter, David formally raised *laches* in a memorandum in support of his motion for reconsideration following the trial court's judgment and argued it during the hearing on his motion. However, "[a]ffirmative defenses raised for the first time in a motion for reconsideration are considered waived." *Harmon Insurance*, 226 Ill. App. 3d at 1052, 590 N.E.2d at 921. (Moreover, David raised *laches* only in his memorandum, and not in his motion to reconsider.) Because David failed to properly plead *laches* as an affirmative defense, we cannot say the court erred in declining to apply it.

¶ 47                                    III. CONCLUSION

¶ 48    For the foregoing reasons, we affirm the trial court's judgment.

¶ 49    Affirmed.