*In re* MARRIAGE OF FRANCES MARCIA MARSHALL, Petitioner-Appellee, and WILLIAM EUGENE MARSHALL, Respondent-Appellant.

Fourth District   No. 4—87—0600

Opinion filed March 9, 1988.

M. Eugene Wright, of Wright Law Offices, of Danville, for appellant.

Robert C. Hofmann, of Dougherty, Hofmann & Goodwin, of Danville, for appellee.

JUSTICE LUND delivered the opinion of the court:

On July 13, 1987, the circuit court of Vermilion County entered an order pursuant to a motion for summary judgment filed by petitioner Frances Marcia Marshall, directing respondent William Eugene Mar-

shall to pay to petitioner a portion of the payments he receives from being placed by the military on the temporary disability retired list. Respondent appeals.

A judgment for dissolution of marriage was entered in the marriage of petitioner Frances Marshall and respondent William Marshall by the circuit court of Vermilion County on September 13, 1979. At the time, the parties had been married 17 years, and respondent had been in the Air Force the entire time. In 1984, respondent was diagnosed as having cancer, and on August 20, 1984, the military declared him 100% disabled and placed him on the temporary disability retired list, at which time he began receiving benefits.

On December 11, 1984, a petition for entry of an order *nunc pro tunc* was filed by petitioner. The purpose of the petition was to correct an alleged scrivener's error in the dissolution order. A review of the order indicates that in the findings of the order, paragraph No. 17 states it is the agreement of the parties that respondent would stay in the military for at least 20 years, and petitioner would receive one-half of any retirement benefits attributable to the 17 years of their marriage.

On September 30, 1986, the court entered a *nunc pro tunc* order adding the following language to the operative part of the 1979 judgment for dissolution:

"William Eugene Marshall will not voluntarily take any action to jeopardize the acquisition of his military pension benefits; that at such time as William Eugene Marshall is entitled to receive the military pension, that Frances Marcia Marshall will be entitled to receive from William Eugene Marshall one-half of the gross military pension received by William Eugene Marshall based upon a figure determined by dividing each gross monthly military pension payment by the total number of years of military service of William Eugene Marshall completed in determining that benefit, and by further multiplying the figure obtained by said division by 17 years.

William Eugene Marshall shall pay to Frances Marcia Marshall the sum as determined by the computations outlined in the preceding paragraph, in lieu of all maintenance, support or other marital rights which Frances Marcia Marshall may have in and to William Eugene Marshall's assets and estate. Payments shall commence upon William Eugene Marshall's receipt of the military pension, and payable from month to month thereafter so long as Frances Marcia Marshall shall live. No event, other than the death of Frances Marcia Marshall, shall

terminate Frances Marcia Marshall's right to receipt of said payment from William Eugene Marshall or his estate."

On November 21, 1986, petitioner filed an amended petition for money judgment requesting, in part, that respondent be ordered to pay petitioner her share of the payments he received from being placed on the temporary disability retired list as required by that portion of the dissolution judgment dealing with military pensions. Respondent answered that the temporary disability retired list payments are disability payments and not pension benefits.

On March 2, 1987, petitioner filed a motion for summary judgment. On May 29, 1987, the court entered a memorandum opinion holding the temporary disability retired list payments were actually a retirement pension, and petitioner was entitled to her share of the whole amount. The court went on to find this pension is includable in marital property and that the Illinois courts have power to allocate the pension.

Prior to addressing the specific issues, we review the Federal statutory framework relating to the question of military benefits, as set forth in title 10 of the United States Code (Code) pertaining to the armed services.

An officer in the Air Force with at least 20 years of service may retire and receive "retired pay" in the amount calculated by 2½% multiplied by the years of service multiplied by the monthly basic pay of the member's retired grade, up to a maximum of 75% of said monthly basic pay. See 10 U.S.C.A. §§8911, 8991 (West Supp. 1987); 10 U.S.C. §8911 (1982) (20 years or more: regular or reserve commissioned officer); 10 U.S.C. §8991 (Supp. IV 1986) (computation of retired pay).

If an active member of the military is found unfit to perform his duties because of a physical disability incurred while on duty, the Secretary may retire the member if the member has 20 years of service or is more than 30% disabled and has at least 8 years of service. (10 U.S.C.A. §1201 (West 1983 & Supp. 1987); see also 10 U.S.C. §1201 (1982 & Supp. IV 1986) (regulars and members on active duty for more than 30 days: retirement).) The member would then be entitled to elect to receive his "retired pay" as 2½% multiplied by the number of years of service multiplied by the monthly base pay, up to a maximum of 75% of the monthly base pay; or the percentage of disability on the date retired multiplied by the monthly base pay, up to a maximum of 75% of the monthly base pay. 10 U.S.C.A. §1401 (West Supp. 1987); 10 U.S.C. §1401 (Supp. IV 1986) (computation of retired pay).

If the Secretary determines a member would be subject to retirement under section 1201 of title 10 of the Code but for the fact that his disability is not determined to be of a permanent nature, the Secretary may place the member on the temporary disability retired list. 10 U.S.C.A. §1202 (West Supp. 1987); 10 U.S.C. §1202 (Supp. IV 1986) (regulars and members on active duty for more than 30 days: temporary disability retired list).

Once a member has been placed on the temporary disability retired list, he will be subject to periodic examinations for a period up to five years. If at the end of five years he still has the disability, the disability shall be considered permanent, and he shall be treated as under section 1201 of title 10 of the Code. See 10 U.S.C.A. §1210 (West 1983 & Supp. 1987); 10 U.S.C. §1210 (1982 & Supp. IV 1986) (members on temporary disability retired list: periodic physical examination; final determination of status); see also 10 U.S.C.A. §1201 (West 1983 & Supp. 1987); 10 U.S.C. §1201 (1982 & Supp. IV 1986).

A member, while on the temporary disability retired list, could elect to receive his "retired pay" as 2½% multiplied by the number of years of service multiplied by the monthly base pay as defined, up to a maximum of 75% of the monthly base pay; or the percentage of disability multiplied by the monthly base pay, up to a maximum of 75% of monthly pay. 10 U.S.C.A. §1401 (West Supp. 1987); see also 10 U.S.C. §1401 (Supp. IV 1986) (computation of retired pay).

In the present case, respondent has been diagnosed as suffering from lymphoma, a type of cancer. He has been classified as 100% disabled. A letter from the treating physician establishes that respondent's condition is incurable. Therefore, it would seem reasonable to assume that at the end of the five years on the temporary disability retired list, respondent will be found permanently disabled and receive benefits under section 1201 of title 10 of the Code and not under the regular retirement procedures of sections 8911 and 8991 of that title.

There are three questions presented by the briefs. These are:

(1) Are Illinois courts precluded under the concept of Federal preemption from allocating benefits received by respondent while on the temporary disability retired list?

(2) If not, are the benefits received by respondent while on the temporary disability retired list includable in the definition of marital property in the Illinois Marriage and Dissolution of Marriage Act (Act) (Ill. Rev. Stat. 1985, ch. 40, par. 500 *et seq.*) and subject to equitable distribution, or does the fact the parties agreed to allocate respondent's "gross military pension"

make this determination immaterial?

(3) If so, are the benefits received by respondent while on the temporary disability retired list affected by the judgment of dissolution which refers to "gross military pension?"

Respondent first asserts that Illinois courts are precluded from allocating his payments received while on the temporary disability retired list by concepts of Federal preemption. For that proposition, he relies on the Uniformed Services Former Spouses' Protection Act (Pub. L. No. 97—252, title 10, 96 Stat. 730 (1982); see also 10 U.S.C.A. §1401, at 158-59 (West 1983)). See 10 U.S.C.A. §1408 (West 1983 & Supp. 1987).

The United States Supreme Court in *McCarty v. McCarty* (1981), 453 U.S. 210, 235-36, 69 L. Ed. 2d 589, 608, 101 S. Ct. 2728, 2742-43, held that State courts were prohibited from dividing military nondisability pensions in dissolution actions. Congress reacted by enacting the Uniformed Services Former Spouses' Protection Act, which eliminated preemption after June 25, 1981.

The Uniformed Services Former Spouses' Protection Act provided in part:

"Subject to the limitations of this section, a court may treat disposable retired or retainer pay payable to a member for pay periods beginning after June 25, 1981, either as property solely of the member or as property of the member and his spouse in accordance with the law of the jurisdiction of such court." 10 U.S.C.A. §1408(c)(1) (West 1983).

The definition of disposable retired or retainer pay contained in the original Uniformed Services Former Spouses' Protection Act relevant to this case provided:

" 'Disposable retired or retainer pay' means the total monthly retired or retainer pay to which a member is entitled (other than the retired pay of a member retired for disability under chapter 61 of this title) ***." 10 U.S.C.A. §1408(a)(4) (West 1983).

Compare 10 U.S.C.A. §1408(a)(4) (West 1983 & Supp. 1987).

Chapter 61 of this title deals with retirement or separation for physical disability and includes the sections involved in the present case. (10 U.S.C.A. §§1201 through 1221 (West 1983 & Supp. 1987); see also 10 U.S.C. §§1201 through 1221 (1982).) Therefore, it appears under the original Uniformed Services Former Spouses' Protection Act, it was the intent of Congress to preclude chapter 61 disability payments from being included in the definition of "disposable retired or retainer pay." It may follow that since the Uniformed Services

Former Spouses' Protection Act only allows for the States to allocate disposable retired or retainer pay, the States are then preempted from allocation of section 61 disability payments.

The relevant portion of the definition of "disposable retired or retainer pay" was amended in 1986. It provides:

> " 'Disposable retired or retainer pay' means the total monthly retired or retainer pay to which a member is entitled less amounts which—
>
> * * *
>
> (E) in the case of a member entitled to retired pay under chapter 61 of this title, are equal to the amount of retired pay of the member under that chapter computed using the percentage of the member's disability on the date when the member was retired (or the date on which the member's name was placed on the temporary disability retired list) ***." 10 U.S.C.A. §1408(a)(4)(E) (West Supp. 1987).

While this amendment is not crystal clear, it appears to be an effort to include longevity portions of chapter 61 benefits in disposable retired or retainer pay but keep the disability portion out.

For reasons hereinafter set forth, it is not necessary to determine what is and what is not preempted by congressional action.

■■ The parties' dissolution agreement, not a contested court determination, provided for the division of respondent's gross monthly military pension. At the time of dissolution, sections 502(a) and (b) of the Illinois Marriage and Dissolution of Marriage Act (Act) (Ill. Rev. Stat. 1979, ch. 40, pars. 502(a), (b)) provided as follows:

> "(a) To promote amicable settlement of disputes between parties to a marriage attendant upon the dissolution of their marriage, the parties may enter into a written or oral separation agreement containing provisions for disposition of any property owned by either of them, maintenance of either of them and support, custody and visitation of their children.
>
> (b) The terms of the separation agreement, except those providing for the support, custody and visitation of children, are binding upon the court unless it finds, after considering the economic circumstances of the parties and any other relevant evidence produced by the parties, on their own motion or on request of the court, that the separation agreement is unconscionable."

Basically, this section has not been changed. (Compare Ill. Rev. Stat. 1985, ch. 40, pars. 502(a), (b).) Nonmarital property can, thus, be divided by agreement. (See *In re Marriage of Miller* (1981), 98 Ill. App.

3d 1084, 1088, 424 N.E.2d 1342, 1346.) We find the same reasoning can be equally applied to interests preempted from State court allocation.

We recognize that prior to *McCarty v. McCarty* (1981), 453 U.S. 210, 69 L. Ed. 2d 589, 101 S. Ct. 2728, the courts of this State considered all pensions, including military, to be marital property and subject to the provision of the Act. (*In re Marriage of Musser* (1979), 70 Ill. App. 3d 706, 388 N.E.2d 1289; *In re Marriage of Pieper* (1979), 79 Ill. App. 3d 835, 398 N.E.2d 868.) This determination logically followed from the reading of the Act and the purposes for its adoption.

■ If *McCarty* had been decided prior to the 1979 dissolution and congressional action had not yet changed the preemption status, the parties might have taken a different approach to the agreement concerning the military pension. However, we find no justification for voiding past marital dissolution agreements because of subsequent changes in the status of the law.

■ The provision relating to the pension allocation was only one of the elements of the agreement between the parties, but, undoubtedly, affected the other terms. We can only speculate what would have been required in the way of maintenance and other property divisions if the pension provision had not been included. We hold that the pension provision in the dissolution agreement was enforceable as a contractual term regardless of the preemptive status. We note that a contrary holding could require voiding the entire 1979 agreement. *Therm-O-Proof Insulation Manufacturing Co. v. Hoffman* (1946), 329 Ill. App. 645, 646, 69 N.E.2d 725; 17 C.J.S. *Contracts* §130 (1963); 12 Ill. L. & Prac. *Contracts* §63 (1983).

■ We find no reason to distinguish nonpreempted regular military retirement benefits from possibly preempted disability retirement benefits as far as contractual provisions are concerned. Preemption does nothing more than create a nonmarital status which is regulated by section 503(d) of the Act. (Compare Ill. Rev. Stat. 1979, ch. 40, par. 503(d), and Ill. Rev. Stat. 1985, ch. 40, par. 503(d).) The nonmarital interest can still be contracted away pursuant to section 502 of the Act. See Ill. Rev. Stat. 1979, ch. 40, par. 502; see also Ill. Rev. Stat. 1985, ch. 40, par. 502.

■ Whether the retirement benefits going to the petitioner would include disability retirement benefits must be determined from the intention of the parties. The intention must be determined from considering the entire agreement. (*Guhl v. Guhl* (1941), 376 Ill. 100, 110, 33 N.E.2d 185, 189; *In re Marriage of Arkin* (1982), 108 Ill. App. 3d

103, 108, 438 N.E.2d 957, 961-62.) The respondent agreed not to take any action to interfere with his obtaining at least the 20-year pension, specifically agreeing to stay in the military service for the minimum 20-year period. The parties necessarily intended that there would be funds for the petitioner upon respondent leaving active service. We note that if disability retirement benefits were not included under the agreement, there would be a distinct possibility respondent could receive disability retirement benefits in excess of what his regular retirement benefits would have been and petitioner would receive nothing.

■■ The sum petitioner would normally receive under the agreement would be significant. The significance of the amount necessarily implies the importance as a consideration for the original agreement. To allow a technicality, *i.e.*, a disability benefit instead of regular retirement pay, to defeat the terms of the agreement could hardly have been the intention of the parties. We conclude that the dissolution agreement can be reasonably interpreted in only one way—the petitioner was going to be paid the percentage of what would be the normal retirement benefits, whether respondent was paid normal retirement benefits or disability retirement benefits. Proper interpretation of the agreement also does not allow the petitioner to share in the portion of disability retirement benefits paid to respondent that exceed what would have been the regular retirement payments.

From examination of the record, we are unable to determine whether the trial court's calculation of the amount owing from the pension benefits was consistent with our determination of liability. We remand so that the trial court can compute the amount owing, not from what the disability payments were, but from what the retirement payments would have been had respondent retired and not been placed on disability.

Affirmed in part; vacated in part and remanded with directions.

KNECHT and SPITZ, JJ., concur.