No. 3-07-0345
_____

Filed May 28, 2008

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2008

| | | |
|---|---|---|
| In re MARRIAGE OF | ) | Appeal from the Circuit Court |
| LYNETTE KATHERINE SCHURTZ, | ) | of the Tenth Judicial Circuit |
| | ) | Peoria County, Illinois |
|     Petitioner-Appellee | ) | |
|     Cross-Appellant, | ) | |
| | ) | No. 92-D-49 |
|     and | ) | |
| | ) | |
| JOHN BARTON SCHURTZ, | ) | |
| | ) | Honorable |
|     Respondent-Appellant | ) | Stephen Kouri |
|     Cross-Appellee. | ) | Judge Presiding |

_____

JUSTICE LYTTON delivered the Opinion of the court:
_____

In 1993, John and Lynette Schurtz entered into a marital settlement agreement, requiring John to divide his retirement benefits with Lynette. In 2004, John stopped working and began receiving disability benefits. When John refused to divide his benefits with Lynette, she filed a petition for rule to show cause and to enforce judgment. The trial court granted the petition. Lynette then filed a petition for attorney fees, which the trial court denied.

John appeals, arguing that the trial court erred in ordering him to pay benefits to Lynette. Lynette cross-appeals, arguing that the trial court erred in denying her requests for attorney fees and prejudgment interest. We affirm.

John and Lynette Schurtz were married in 1962. John became a firefighter for the City of Peoria soon thereafter. After 30 years

of marriage, Lynette filed a petition for dissolution of marriage. In 1993, the trial court entered a judgment for dissolution that incorporated a marital settlement agreement. Section 6j of the settlement agreement provided in pertinent part:

"As a part of the distribution of marital property, the parties will divide evenly JOHN B. SCHURTZ' accrued retirement pension benefits as of September 16, 1993, if, as, and when received by him. * * * In the event a Qualified Domestic Relations Order is lawfully able to be entered in the future with regard to said pension, each party will cooperate to the entry thereof."

In late 2004, when John was 62 years old, he became unable to work as a firefighter. He applied for occupational disease disability benefits. The City of Peoria Fireman's Pension Board approved John's application for benefits. John began receiving $4,374.00 per month in disability payments.

In February 2005, Lynette's attorney sent John a letter demanding that he consent to the issuance of a Qualified Domestic Relations Order (QDRO) on Lynette's behalf so that she could receive a portion of John's disability benefits in accordance with the marital settlement agreement. When John refused, Lynette filed a Petition for Rule a Show Cause and Enforce Judgment.

At hearings on Lynette's petition, John testified that he did not intend to retire when he went on disability and would return to work if he were physically able. However, he admitted that he signed a "Change of Status" form from the City of Peoria that indicated his "purpose of leaving" as "retired." He admitted that

2

he may stay on disability forever, but he may elect to receive retirement benefits if that becomes more financially advantageous to him.

After hearings on Lynette's petition, the trial court granted Lynette's rule to show cause, holding that John's disability pension was a retirement pension for purposes of section 6j of the marital settlement agreement. Thereafter, Lynette filed a petition for attorney fees, arguing that John's failure to consent to the issuance of a QDRO was "without cause or justification."

In a supplemental order, the court ordered John to pay Lynette $1,534.34 of the $4,374.00 in benefits he received monthly and $41,980.08 for past due amounts. The court did not require John to pay prejudgment interest on the past due amounts but ordered that he pay interest of 9.0% per annum on any future delinquent payments. The court denied Lynette's request for attorney fees, finding that John had a good faith justification for failing to pay Lynette prior to the court ordering him to do so.

## I.

The main objective when construing a marital settlement agreement is to give effect to the purpose and intent of the parties at the time they entered into the agreement. In re Marriage of Davis, 286 Ill. App. 3d 1065, 1066, 678 N.E.2d 68, 69 (1997). Where the language of the agreement is clear and its meaning is unambiguous, courts must give effect to that language. Davis, 286 Ill. App. 3d at 1066, 678 N.E.2d at 69. However, if the agreement is ambiguous, the court must ascertain the intent of the parties by examining the facts and circumstances surrounding the

3

formation of the agreement. <u>Davis</u>, 286 Ill. App. 3d at 1067, 678 N.E.2d at 70.

When a pension plan provides disability benefits as well as retirement benefits and the marital settlement agreement refers only to "retirement" benefits and is silent as to disability payments, a court may reasonably interpret the agreement in one of two ways: (1) as a grant to the ex-spouse of a portion of <u>any</u> benefits received under the pension plan, or (2) as limiting the ex-spouse's interest in the pension plan to normal, age-related retirement benefits. See <u>Davis</u>, 286 Ill. App. 3d at 1067, 678 N.E.2d at 70. How the court interprets the agreement depends on the facts and circumstances of the case. See <u>Davis</u>, 286 Ill. App. 3d at 1067, 678 N.E.2d at 70; <u>Camp v. Hollis</u>, 332 Ill. App. 60, 74 N.E.31 (1947) (when an agreement is susceptible to two constructions, the interpretation that makes a rational and probable agreement under the circumstances is favored).

When a disabled ex-husband is not yet eligible for retirement pay, a marital settlement agreement entitling the ex-wife to "retirement" benefits should not be interpreted to grant her a share of her ex-husband's disability income. See <u>Davis</u>, 286 Ill. App. 3d 1065, 678 N.E.2d 68 (ex-husband became disabled before the normal retirement age and would begin receiving retirement benefits, which ex-wife would share, when he turned 60); <u>In re Marriage of Belk</u>, 239 Ill. App. 3d 806, 605 N.E.2d 86 (1992) (ex-husband began receiving disability pension at age 41, before he was eligible for regular retirement pay). This interpretation is reasonable because the disability pay is meant to replace the

4

disabled ex-husband's income, not act as retirement pay.  See Davis, 286 Ill. App. 3d 1065, 678 N.E.2d 68;Belk, 239 Ill. App. 3d 806, 605 N.E.2d 86

However, when an ex-husband is entitled to receive retirement pay and is receiving disability income instead, a settlement agreement providing the ex-wife a portion of retirement benefits "can be reasonably interpreted in only one way -- the petitioner [should] be paid the percentage of what would be the normal retirement benefits, whether respondent [is] paid normal retirement benefits or disability retirement benefits."  In re Marriage of Marshall, 166 Ill. App. 3d 954, 962, 520 N.E.2d 1214, 1219 (1988). It is not the label of the payments (i.e. disability or retirement) that controls.  See Marshall, 166 Ill. App. 3d at 962, 520 N.E.2d at 1219. "To allow a technicality, i.e., a disability benefit instead of a regular retirement pay, to defeat the terms of the agreement could hardly have been the intention of the parties." Marshall, 166 Ill. App. 3d at 962, 520 N.E.2d at 1219.

Here, John was eligible for retirement pay when he began receiving disability benefits.  See 40 ILCS 5/4-109(a) (West 2004). He elected to receive disability payments instead of retirement benefits. The amount of disability pension John receives is exactly the same as he would receive as a retirement benefit.  See 40 ILCS 5/4-110(2) (West 2004).  Although John's payments are labeled "disability payments," they are, essentially, retirement benefits. His disability benefits do not serve as income replacement, but as a replacement for his retirement pension.  Thus, the trial court properly found that Lynette was entitled to share in the payments.

See Marshall, 166 Ill. App. 3d at 962, 520 N.E.2d at 1219.

## II.

Section 508(b) of the Marriage and Dissolution of Marriage Act (Act) provides:

> In every proceeding for the enforcement of an order or judgment when the court finds that the failure to comply with the order or judgment was without compelling cause or justification, the court shall order the party against whom the proceeding is brought to pay promptly the costs and reasonable attorney's fees of the prevailing party.
>
> 750 ILCS 5/508(b) (West 2004).

A court may deny attorney fees and costs where the failure to pay was justified or not willful and wanton. In re Marriage of Michaelson, 359 Ill. App. 3d 706, 715, 834 N.E.2d 539, 547 (2005). We will not reverse a trial court's decision to deny attorney fees unless the trial court abused its discretion. Berger v. Berger, 357 Ill. App. 3d 651, 662, 829 N.E.2d 879, 889 (2005).

A court may award prejudgment interest when warranted by equitable considerations and disallow it where it would not comport with justice and equity. Regnery v. Meyers, 287 Ill. App. 3d 354, 366, 679 N.E.2d 74, 82 (1997). A decision regarding prejudgment interest is within the trial court's discretion and will not be disturbed on review absent an abuse of discretion. See Jones v. Hryn Development, Inc., 334 Ill. App. 3d 413, 419, 778 N.E.2d 245, 250 (2002).

Here, Lynette sought attorney fees and prejudgment interest, arguing that John's refusal to consent to the qualified domestic

6

relations order was without cause or justification. The trial court denied Lynette's requests, explaining:

> "The issues presented by this dispute were difficult and unique. While on the one hand Respondent candidly testified that he did not want Petitioner to share in his monthly check, the legal stance he advanced was not without an arguable basis. Accordingly, the court finds that there was a good faith justification for failure to pay thus far. Accordingly, no legal fees under Section 508(a) or (b), or 'prejudgment' interest, shall be awarded."

The trial court did not err in denying Lynette attorney fees under section 508(b) of the Act. John had a good faith argument that he was not required to pay Lynette any portion of his disability payments based on a narrow reading of the marital settlement agreement. See Davis, 286 Ill. App. 3d 1065, 678 N.E.2d 68; Belk, 239 Ill. App. 3d 806, 605 N.E.2d 86. Although the trial court ultimately found that John's interpretation of the marital agreement was incorrect, it was not unreasonable. See Davis, 286 Ill. App. 3d 1065, 678 N.E.2d 68; Belk, 239 Ill. App. 3d 806, 605 N.E.2d 86. Thus, the trial court did not abuse its discretion by denying Lynette her attorney fees.

Additionally, the trial court's decision to deny Lynette prejudgment interest was not an abuse of discretion. Under the trial court's supplemental order, Lynette received over $41,000 in past due amounts from John and would continue to receive over $1,500 from John each month. Since Lynette received a significant

7

recovery, the trial court did not abuse its discretion in denying her request for prejudgment interest. See Regnery, 287 Ill. App. 3d at 366-67, 679 N.E.2d at 82.

CONCLUSION

The judgment of the circuit court of Peoria County is affirmed.

Affirmed.

CARTER, J., concurring.

JUSTICE HOLDRIDGE, dissenting in part and concurring in part:

I believe that the trial court and the majority herein would be correct in awarding Lynette Schurtz a portion of John Schurtz's disability benefits were it not for the fact that disability benefits paid pursuant to section 4-110.1 of the Illinois Pension Code (40 ILCS 5/4-110.1 (West 2004)) are, as a matter of law, not subject to division in a dissolution proceeding. I must therefore respectfully dissent from the ruling upholding the division of John's disability pension.

The Associated Fire Fighters of Illinois and Board of Trustees of the Firefighters' Pension Fund of the City of Peoria, each filed amicus curiae in this matter arguing it was the intent of the legislature not to make disability benefits subject to payment to an alternate payee. Both point out that disability benefits, unlike retirement benefits, are not entitlements subject to the discretion of the member. Rather, disability benefits are only paid after the fiduciary board is satisfied that the rigid requirements for awarding disability benefits have been met. Krohe v. City of Bloomington, 204 Ill. 2d 392 (2003); Village of Stickney v. Board of Trustees of the Police Pension Fund, 347 Ill.

App. 3d 845 (2004).

The amici also point out that the Pension Code implicitly exempts disability benefits from distribution to a third party payee. The Code provides for distribution of benefits to third party payees under a Qualified Illinois Domestic Relations Order (QILDRO). 40 ILCS 5/4-119 (West 2004), but then specifically provides that "a QILDRO shall not apply to or affect the payment of any survivor's benefit, death benefit, disability benefit, life insurance benefit, or health insurance benefit." 40 ILCS 5/1-119(b)(4) (West 2004). Thus, the amici maintain, the express language of the pension code excludes disability benefits from payment to an alternate payee.

This presents a matter of statutory interpretation which presents an issue of law to be reviewed de novo. City of Belvidere v. Illinois State Labor Relations Board, 181 Ill. 2d 191 (1998). While there are no cases adopting the position articulated by the amici, I am convinced that the legislative intent is nonetheless clear. Based upon the statutory analysis proffered by the amici, I would find that the trial court erred as a matter of law in subjecting John's disability benefit to division. I would reverse and remand on that basis.

I concur with the majority's decision to affirm the trial court's denial of Lynette's motion for attorney fees.