2019 IL App (1st) 182028

FIFTH DIVISION
September 30, 2019

Nos. 1-18-2028, 1-18-2706 cons.

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | |
|---|---|
| *In re* MARRIAGE OF | ) Appeal from the Circuit Court |
| | ) of Cook County. |
| JODI SHULGA, | ) |
| | ) |
|     Petitioner and Third-Party Petitioner-Appellee, | ) |
| | ) |
| and | ) No. 14 D 10594 |
| | ) |
| RONALD SHULGA, | ) |
| | ) |
|     Respondent | ) |
| | ) |
| (Mary Klebba-Shulga, Third-Party Respondent-Appellant). | ) Honorable Naomi H. Schuster, |
| | ) Judge Presiding. |

JUSTICE DELORT delivered the judgment of the court, with opinion.
Justices Hall and Rochford concurred in the judgment and opinion.

**OPINION**

¶ 1     This dispute began as a standard divorce case between Jodi Shulga and her husband, Ronald Shulga. The case ran its natural course and terminated with a judgment for dissolution of marriage. After Ronald's death, Jodi filed a third-party complaint against Mary Klebba-Shulga, alleging that Mary was unjustly enriched because she was receiving a pension as the surviving spouse of a disabled firefighter pursuant to section 4-114 of the Illinois Pension Code (Code) (40 ILCS 5/4-114 (West 2016)). Jodi's complaint sought the imposition of a constructive trust. The

circuit court granted the relief sought in Jodi's amended complaint, and Mary now appeals. We affirm.

¶ 2                                    BACKGROUND

¶ 3     On November 20, 2014, Jodi filed a petition for dissolution of marriage. The petition stated that when she and Ronald were married on May 19, 1991, Ronald was employed as a firefighter by the City of Evanston. The assets listed as property acquired during their marriage included real property located in Niles, Illinois; vehicles; bank accounts; and "Retirement plans." Ronald filed a *pro se* answer, which consisted of a single sentence: "Yes, I agree to a divorce from Jodi A. Shulga."

¶ 4     On April 12, 2016, the circuit court entered an order dissolving the marriage. The court's order incorporated a marital settlement agreement (MSA). Article V of the MSA, entitled "Marital Property," provided in relevant part as follows:

> "RONALD is currently a participant in the following accounts:
>
> a. City of Evanston Pension Plan
>
>                              * * *
>
> JODI is awarded fifty percent (50%) of the marital portion of said accounts via a *** Qualified Illinois Domestic Relations Order (QILDRO) ***. The remaining balance after the disbursement delineated herein shall be awarded to RONALD as his sole and exclusive property, free and clear of any claim or interest by JODI. ***. Jodi and Ronald shall take all necessary actions to satisfy the foregoing conditions and to implement all of the provisions of this

paragraph (including to amend the judgment to the extent necessary), and the Court hereby retains jurisdiction for the purpose of amending this judgment to the extent necessary to satisfy such condition and implement such provisions even after the death of one or both of the parties."

¶ 5    Ronald was first diagnosed with non-Hodgkin's small-cell lymphoma in early 2000. On July 26, 2016, Ronald applied for a line-of-duty disability pension from the Evanston Firefighters' Pension Fund (Fund), claiming that his condition prevented him from continued service as a firefighter. Ronald was 55 years old at the time and had worked for the Evanston Fire Department since May 12, 1987.

¶ 6    Ronald married Mary in August 2016. On October 20, 2016, the circuit court entered a QILDRO that, among other things, directed the Fund to pay Jodi 50% of Ronald's "Monthly Retirement Benefit" that he had accrued from the date of Ronald and Jodi's marriage until the date of the divorce. The QILDRO further provided that, so long as it was in effect, Ronald was prohibited from choosing "a form of payment of the retirement benefit that has the effect of diminishing the amount of the payment to which the alternate payee is entitled," unless that alternate payee consented in writing and the consent was notarized and filed with the Fund. Both the MSA and the QILDRO are silent with respect to the allocation of any firefighter death benefits.

¶ 7    On May 11, 2017, the Board of Trustees of the Firefighters' Pension Fund of Evanston (Board) issued an administrative decision on Ronald's application. The Board found that, due to his illness, Ronald had to stop working for the fire department on July 4, 2016. The Board concluded that Ronald was entitled to a line of duty disability pension benefit pursuant to section

4-110 of the Code (40 ILCS 5/4-110 (West 2016)) but subject to any offsets pursuant to section 4-114.2 of the Code (*id.* § 4-114.2). The effective date of the award was fixed as August 1, 2017, a date when Ronald would have "exhausted any salary payments from [the City of Evanston,]" but Ronald died on the same day as the Board issued its decision.

¶ 8    On May 15, 2017, Mary applied to the Fund for survivor benefits as Ronald's widow, and she began receiving 100% of the death benefits from the Fund, whereas Jodi received none. Mary, who was married to Ronald for only nine months, ended up receiving benefits of $9,169.53 per month as the surviving spouse of a disabled firefighter pursuant to section 4-114 of the Code (*id.* § 4-114). By contrast, Jodi, who was married to him for nearly 25 years, received nothing, despite the MSA and the corresponding QILDRO order. Ronald had worked as an Evanston firefighter during his entire marriage to Jodi.

¶ 9    The divorce case remained dormant until January 18, 2018, when, with leave of court, Jodi filed her third-party complaint seeking the imposition of a constructive trust against Mary. Jodi's prayer for relief sought, among other things, the imposition of a constructive trust upon any death or survivor's benefits paid by the Fund, including "those relating to Ronald['s] disability pension."

¶ 10    On May 22, 2018, the circuit court entered an order (1) allowing Jodi to file an amended complaint, (2) directing the parties to submit "memos" to the court by July 11, 2018, and (3) setting the matter for "argument on [the] underlying pleading" on July 18, 2018.

¶ 11    On May 30, 2018, Jodi filed her amended complaint against Mary. The amended complaint differed from the original only because it added wording in the prayer for relief including Ronald's "disability pension." The amended complaint alleges that throughout the marriage, Ronald was a firefighter for the City of Evanston and a percentage of Ronald's salary

was paid into the Fund for retirement purposes. The amended complaint also alleges as follows. The spouses agreed to equally divide any proceeds from the Fund, and the circuit court approved of this arrangement and entered a QILDRO reflecting this division. The QILDRO further required that Jodi be designated Ronald's beneficiary upon his death.

¶ 12    In her answer to the original third-party complaint, Mary asserted that "under the Illinois Firefighters Pension Code [*sic*], disability benefits are not retirement benefits." Mary noted that she only received disability benefits, and since those benefits are not subject to a QILDRO, Jodi was not entitled to them. Mary's answer did not challenge the circuit court's equitable power on this issue, and it did not assert that Jodi waived disability payments or that she sought an improper remedy. She also denied that she was unjustly enriched and that Jodi was entitled to an order imposing a constructive trust on the benefits. The parties later filed memoranda outlining their respective positions.

¶ 13    Thereafter, no further pleadings were filed with respect to the amended complaint.

¶ 14    On August 27, 2018, the circuit court held a hearing on Jodi's amended complaint, the memoranda, and exhibits. During the hearing, the court asked counsel for Mary to address "the equities argument" that Jodi had raised, namely, "that the parties did, in fact, contract for the division of the major marital asset following a long-term marriage." Mary's counsel responded that the decision in *In re Marriage of Farrell*, 2017 IL App (1st) 170611, addressed "[t]he exact same argument." When the court observed that *Farrell* did not involve the imposition of a constructive trust, counsel for Mary replied that the former wife in *Farrell* "still wanted for them to basically invade or do away with their agreement." Counsel did not, however, challenge whether a constructive trust would be an available remedy in this case or whether the court has

the power to impose one. Counsel for Mary also did not argue that, under the MSA, Jodi waived any claim on Ronald's disability benefits.

¶ 15   At the conclusion of the hearing, the circuit court found that it had the power to create a constructive trust over the amounts paid to Mary and that Jodi established the "necessary requirements" for the imposition of a constructive trust. The court further found that, under the MSA, Jodi was to receive "50 percent * * * of the pension and the death benefits" and that "to rule otherwise would result in an unjust enrichment to [Mary]." Without objection from the parties, the court stated that its ruling was based on Jodi's "petition."

¶ 16   On September 6, 2018, the court issued a written order finding that Mary was unjustly enriched. The court stated that it would enforce the MSA. The written order directed that the parties open a checking account "titled jointly in the name of Mary Klebba and [Mary's counsel's law firm] as trustee for Jodi." On September 18, 2018, Mary filed a timely notice of appeal seeking review of the circuit court's September 6, 2018, order granting Jodi the relief sought in the complaint. This court docketed that appeal as appeal No. 1-18-2028.

¶ 17   On October 1, 2018, the court issued a written order modifying its September 6, 2018, order to require Mary to tender Jodi's share of the survivor's benefit payments for deposit into the client trust account of Mary's counsel's law firm. On November 26, 2018, the court issued a third order, clarifying that the monthly amount payable to Jodi under the October 1 order would be $4,584.76, which was 50% of the gross monthly amount the Fund was paying to Mary. The November 26 order also accounted for a small accumulated delinquency in the recent payments, again stayed enforcement of the judgment, and set forth the parties' agreement with respect to a bond pending appeal and Mary's waiver of her right to a refund of payments she made to Jodi in case of reversal. On December 26, 2018, Mary filed another notice of appeal seeking review of

the orders that the court entered in September, October, and November 2018. This second appeal was docketed as appeal No. 1-18-2706. This court consolidated both appeals.

¶ 18                                    ANALYSIS

¶ 19    Mary contends that the circuit court erred in granting the relief sought in Jodi's amended complaint. Specifically, Mary argues that the court erred in ruling in favor of Jodi because the dissolution judgment and the MSA "do not mention disability benefits." Mary further argues that the court "had no power, equitable or otherwise, to provide any relief that was not specified in the MSA." Finally, Mary adds that Jodi both waived her right to disability benefits under the MSA and also sought an improper remedy below.

¶ 20    At the outset, we note that this case comes before us on a somewhat unusual procedural posture. After Jodi filed her amended complaint and Mary filed her answer to Jodi's complaint, the circuit court heard arguments during a hearing on the amended complaint. The court then granted the relief that Jodi sought in her amended complaint. In other words, the court granted Jodi's requested relief solely on the pleadings, memoranda, and exhibits. There was no trial, no motion for summary judgment, and no written motion for judgment on the pleadings.

¶ 21    Nonetheless, we note that none of the parties objected to the manner in which the court resolved the complaint, and they do not raise the issue in this court. In her brief, Jodi stated that the parties agreed to a "bench hearing on the issue," and it appears that the proceeding was in the nature of a bench trial where all of the facts were uncontested. That being the case, the proceedings below were the functional equivalent of a motion for judgment on the pleadings. Therefore, absent any procedural objection from the parties (either here or in the court below), we will review the judgments below as if the court had entered them on a motion for judgment on the pleadings. "Judgment on the pleadings is properly granted if the pleadings disclose no

genuine issue of material fact and that the movant is entitled to judgment as a matter of law." *Pekin Insurance Co. v. Wilson*, 237 Ill. 2d 446, 455 (2010). Our review is *de novo*. *Id.*

¶ 22 Mary first argues that the circuit court erred in imposing a constructive trust over the survivor's benefit payments to Mary and awarding 50% of those payments to Jodi. Mary again contends that Jodi was not entitled to anything at all because the benefits Mary received were "survivor disability benefits," which were not covered by the MSA.

¶ 23 Jodi's and Ronald's MSA was incorporated into the judgment of dissolution, so we must construe those documents as a single agreement. See *Farrell*, 2017 IL App (1st) 170611, ¶ 12 (citing *In re Marriage of Frank*, 2015 IL App (3d) 140292, ¶ 11). The court imposed the constructive trust as a means of enforcing the terms of Ronald's and Jodi's marital settlement agreement. We construe an MSA in the same manner as a contract. *Id.* Our primary objective is "to give effect to the purpose and intent of the parties at the time they entered into the agreement." *In re Marriage of Schurtz*, 382 Ill. App. 3d 1123, 1125 (2008). If the terms of the agreement are unambiguous, we must give effect to that language. *Id.* By contrast, if the agreement is ambiguous, *i.e.*, where the language is susceptible to more than one reasonable interpretation, a court may hear parol evidence to determine the parties' intent. *Id.* But see *Camp v. Hollis*, 332 Ill. App. 60, 68 (1947) (noting that it is a well-settled rule that, if a contract is susceptible of two constructions, the one that is "rational and probable" must be preferred). We review a circuit court's interpretation of a marital settlement agreement *de novo*. *Schurtz*, 382 Ill. App. 3d at 1129 (Holdridge, J., dissenting in part and concurring in part).

¶ 24 Resolution of this issue hinges on the provision in Jodi and Ronald's MSA granting Jodi 50% of Ronald's benefits under the "City of Evanston Pension Plan." "When a pension plan provides disability benefits as well as retirement benefits and the marital settlement agreement

refers only to 'retirement' benefits and is silent as to disability payments, a court may reasonably interpret the agreement in one of two ways: (1) as a grant to the ex-spouse of a portion of *any* benefits received under the pension plan, or (2) as limiting the ex-spouse's interest in the pension plan to normal, age-related retirement benefits." (Emphasis in original.) *Id.* at 1125 (majority opinion) (citing *In re Marriage of Davis*, 286 Ill. App. 3d 1065, 1067 (1997)).

¶ 25 When a disabled ex-husband is not yet eligible for retirement pay, a marital settlement agreement entitling the ex-wife to "retirement" benefits must not be interpreted to grant her a share of her ex-husband's disability income because in this instance the disability pay does *not* substitute for retirement benefits; rather, it merely replaces the ex-husband's income. *Id.* at 1126. However, when an ex-husband *is* eligible for retirement pay but is receiving disability income instead, a marital settlement agreement providing the ex-wife a portion of "retirement" benefits can be reasonably interpreted " 'in only one way—the petitioner [should] be paid the percentage of what would be the normal retirement benefits, whether respondent [is] paid normal retirement benefits or disability retirement benefits.' " *Id.* (quoting *In re Marriage of Marshall*, 166 Ill. App. 3d 954, 962 (1988)), *appeal denied sub nom. Schurtz v. Schurtz*, 229 Ill. 2d 659 (2008). Thus, in this context, the label of the payments (as being for disability or retirement) is not dispositive. *Id.*

¶ 26 A similar result was obtained in *In re Marriage of Benson*, 2015 IL App (4th) 140682. There, the divorce judgment required the husband, a Decatur firefighter entitled to pension benefits under article 4 of the Code, to pay his ex-wife a portion of his "retirement plan." *Id.* ¶ 5. Nine years later, the husband was injured on the job and obtained a disability pension. He refused to give his ex-wife a portion of those benefits, claiming they were disability, not "retirement" benefits. The appellate court disagreed. It noted that the husband was old enough to

obtain a retirement pension. Then, citing *Schurtz* with approval, it explained: "While [the husband's] payments are considered disability benefits, they are essentially retirement benefits. Like the ex-husband in *Schurtz*, [the husband's] disability benefits do not serve as income replacement, but as a substitute for his retirement pension." *Id.* ¶ 32 (citing *Schurtz*, 382 Ill. App. 3d at 1126). It thus concluded that the ex-wife was entitled to a share of his benefit payments. *Id.* ¶ 33.

¶ 27    In this case, Ronald was already eligible for retirement pay when he was awarded disability benefits. See 40 ILCS 5/4-109(a) (West 2016) (retirement eligibility at age 50). Due to his illness, he could no longer work. He chose, however, to seek line-of-duty disability payments instead of retirement benefits. The amount of Ronald's disability pension was—at a minimum—the same amount he would receive as a retirement benefit. See *id.* § 4-110 (disability pension is the greater of (1) 65% of monthly salary or (2) the retirement pension that the firefighter would have been eligible to receive). Although the Fund paid benefits to Mary as the surviving spouse of a disabled firefighter under section 4-114 of the Code (*id.* § 114), those benefits were in substance retirement—not disability—benefits. Ronald was eligible for retirement benefits when he could no longer work due to his illness even though he applied for disability benefits. Therefore, under the rule expressed in *Schurtz* and *Benson*, the circuit court correctly found that Jodi was entitled to 50% of these payments. To hold otherwise would run contrary to the terms of the MSA, which "could hardly have been the intention of the parties." *Marshall*, 166 Ill. App. 3d at 962. Mary's reliance on *Farrell* on this point is misplaced. There, the court specifically distinguished *Schurtz* and *Benson* on the basis that the husband had not reached retirement age and the underlying marital settlement agreement was more specific with

respect to the classification of benefits subject to division. *Farrell*, 2017 IL App (1st) 170611, ¶ 16.

¶ 28 Mary's remaining arguments are that the court lacked the power to provide relief, "equitable or otherwise," and that Jodi both waived her right to disability benefits under the MSA and also sought an improper remedy (*i.e.*, a constructive trust). Jodi responds that Mary forfeited these arguments.

¶ 29 We agree that these arguments were never presented to the court below. As such, they are forfeited. Under the doctrine of invited error, "a party cannot complain of error which that party induced the court to make or to which that party consented." *In re Detention of Swope*, 213 Ill. 2d 210, 217 (2004). The rationale behind this doctrine is that "it would be manifestly unfair to allow a party a second trial upon the basis of error which that party injected into the proceedings." *Id.* Here, the record reveals that, at the hearing on Jodi's complaint, the circuit court explicitly asked about "the equities" and noted that this case involved a constructive trust, unlike the *Farrell* decision on which Mary's counsel relied. Counsel, however, did not raise any issue with the court's equitable power, the propriety of a constructive trust as relief, or whether Jodi waived any claim. Nor did Mary present these objections in her answer or memorandum of law below. As a result, these claims are forfeited.

¶ 30 Moreover, it is "an elementary principle of law" that a court has the inherent power to enforce its orders, and the circuit court retains jurisdiction to enforce domestic relations orders. *Smithberg v. Illinois Municipal Retirement Fund*, 192 Ill. 2d 291, 297-98 (2000). In addition, a court also retains its traditional equitable powers "[i]rrespective of empowering statutes." *Id.* at 298. As the *Smithberg* court explained:

> "A constructive trust is created when a court declares the party in possession of wrongfully acquired property the constructive trustee of that property because it would be inequitable for that party to retain possession of it. The sole duty of the constructive trustee is to transfer title and possession of the wrongfully acquired property to the beneficiary." *Id.* at 299.

Accordingly, the circuit court's decision to impose a constructive trust was an entirely appropriate remedy to enforce the MSA. Thus, for this additional reason, Mary's arguments are meritless.

¶ 31 Finally, we note that Mary's contentions of error are centered solely upon the September 6, 2018, order, which was listed in appeal No. 1-18-2028. Mary's notice of appeal in appeal No. 1-18-2706, however, lists not only the September 6, 2018, order, but also the circuit court's order of October 1, 2018 (modifying the September order with respect to the receiving account for Mary's payments to Jodi), and November 27, 2018, order (clarifying the amount payable to Jodi and staying the judgment pending appeal). Mary does not raise any specific argument with respect to either the October or November orders. We therefore affirm the circuit court's judgments on those orders, as well.

¶ 32                                    CONCLUSION

¶ 33 The circuit court did not err in granting the relief sought in Jodi's amended complaint. Accordingly, we affirm the judgment of the circuit court of Cook County.

¶ 34 Affirmed.

---

**No. 1-18-2028**

---

| | |
|---|---|
| **Cite as:** | *In re Marriage of Shulga*, 2019 IL App (1st) 182028 |

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 14-D-10594; the Hon. Naomi H. Schuster, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | Paul L. Feinstein, of Paul L. Feinstein, Ltd., and Dean Taradash, of The Taradash Group, P.C., both of Chicago, for appellant. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Olga Allen and Brian J. Hurst, of Hurst, Robin & Kay, LLC, of Chicago, for appellee. |

---