2025 IL App (1st) 241295-U

SECOND DIVISION
June 3, 2025

No. 1-24-1295

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| *In re* MARRIAGE OF | ) | Appeal from the Circuit |
| | ) | Court of Cook County. |
| AMERAH RIAZ, | ) | |
| | ) | |
| Petitioner-Appellant, | ) | No. 17 D 1854 |
| | ) | |
| v. | ) | |
| | ) | |
| KASHIF RIAZ, | ) | Honorable |
| | ) | Gregory E. Ahern, |
| Respondent-Appellee. | ) | Judge Presiding. |

JUSTICE HOWSE delivered the judgment of the court.
Justices McBride and Ellis concurred in the judgment.

ORDER

¶ 1    *Held*: We reverse the circuit court's order dismissing a petition for allocation of an undisclosed marital asset. Petitioner's claim for a portion of respondent's medical malpractice settlement received after the divorce is not barred by the marital settlement agreement because the malpractice claim was not disclosed during the dissolution proceedings. We remand the case for further proceedings on the petition.

¶ 2    Petitioner Amerah Riaz and respondent Kashif Riaz were married for 11 years before petitioner filed for divorce. After the parties entered into a marital settlement agreement and a judgment of dissolution of marriage was entered by the court, respondent filed a medical malpractice claim for injuries resulting from a medical procedure performed during the marriage. Respondent subsequently settled the medical malpractice case for $3.85 million.

¶ 3    Petitioner filed a petition in the circuit court seeking allocation of the medical malpractice settlement on the basis that respondent's malpractice claim was a marital asset that was not disclosed in the marital settlement agreement. Respondent moved to dismiss the petition for allocation. The trial court found that petitioner was aware of respondent's injuries and, therefore, under the release clause in the parties' marital settlement, petitioner waived any claim she may have had to respondent's malpractice recovery. We find that the trial court erred when it granted the motion to dismiss and, accordingly, we reverse and remand for further proceedings.

¶ 4                            BACKGROUND

¶ 5    Petitioner Amerah Riaz and respondent Kashif Riaz married on April 14, 2006. The parties have one child together, a daughter who was born in 2010. In August 2016, respondent was shot during the course of an armed robbery. He received treatment for the gunshot wound at Northwestern Memorial Hospital. At the time respondent was shot and treated for his injuries, he and petitioner were living apart from each other, but they remained married. Respondent moved back into the marital home for about a month after being shot so that petitioner could help to provide care to him during his recovery. Petitioner filed a petition to dissolve the marriage on March 1, 2017. She claimed in her petition that irreconcilable differences had arisen between the parties and the marriage had irretrievably broken down.

¶ 6    During the course of the divorce case, respondent disclosed that he had suffered a gunshot wound that left him unable to work. Respondent disclosed during the course of the case that, as a result of the gunshot wound, he has cauda equina syndrome, bowel incontinence, sexual dysfunction, and numbness in his lower body. Respondent disclosed that he had surgery in January 2017, but the surgery was not successful, so he would be having another surgery at a later time. Petitioner subpoenaed respondent's medical records in an attempt to learn the extent

of respondent's injuries and disability. The parties also exchanged financial affidavits and other discovery. Respondent represented he had disclosed all his assets to petitioner in his discovery responses. However, respondent's disclosure did not include the fact that he had a potential medical negligence case against Northwestern Hospital for negligent treatment of his gunshot wound.

¶ 7    In the marital settlement agreement, respondent and petitioner warranted that they had disclosed in the agreement all assets and property that each owned or had an interest in and that the agreed property allocation would be a full and final settlement of any claims to the property of the other party.

> "[The party] warrants and represents that all assets, property, investments and financial accounts in which [the party] currently owns and/or has an interest are disclosed and identified in this Agreement and agrees that [the party's] acceptance of the property set forth in this Agreement represents a full and final settlement of any claims [the party] may have in and to any of the property, either marital or non-marital, now owned or hereinafter acquired by [the other party], whether real, personal or mixed."

The parties agreed that any assets that were not disclosed would be divided equally.

> "Notwithstanding any other provisions of this agreement, if either party has failed to disclose any assets or properties, which is later uncovered, the parties agree that the other party will be entitled to 50% of the hidden asset property."

¶ 8    On September 6, 2018, before the judgment of dissolution was entered, respondent retained a law firm to represent him in the prosecution of a medical negligence claim against Northwestern. The judgment of dissolution of marriage was entered on November 5, 2018.

¶ 9 On December 14, 2018, about six weeks after the marriage was dissolved by judgment, respondent filed a medical malpractice complaint against Northwestern. There is no indication in the record that respondent disclosed that he had retained a law firm to pursue his malpractice claim, even though he retained the attorney before the settlement of the dissolution case. There is also no indication that respondent ever expressly disclosed to petitioner prior to the dissolution judgment that he was, or believed he might have been, the victim of medical malpractice during the course of the parties' marriage.

¶ 10 Petitioner subsequently learned about the medical malpractice case, and she filed a petition for allocation of undisclosed marital assets on November 11, 2023. The following month, on December 23, 2023, respondent settled his claims against Northwestern for $3.85 million. Respondent filed a motion to dismiss petitioner's petition for allocation of an undisclosed marital asset based, in part, on the terms of the marital settlement agreement.

¶ 11 Respondent argued in his motion to dismiss that his medical malpractice claim was not marital property. Respondent also argued that petitioner failed to allege facts to demonstrate fraudulent concealment and she waived any rights to a potential interest in respondent's medical malpractice claim.

¶ 12 The parties fully briefed the motion to dismiss, and the trial court held oral arguments on the motion. Thereafter, the trial court granted respondent's motion to dismiss in a written order. In its order, the trial court rejected respondent's argument that the medical malpractice claim was not marital property. The trial court, however, concluded that "the plain language of the [settlement agreement] intended a full waiver of all claims and/or causes of action that the other party had at the time of the entry of judgment or in the future, regardless of whether these claims

were known or unknown to either party at the point of prove-up." The trial court further concluded that there was no fraudulent concealment.

> "[Petitioner admits in her own Petition for Allocation that she was aware of [respondent's] underlying injuries. [citation omitted]. The parties engaged in some level of co-parenting of the minor child throughout the divorce process, including during the time in which [respondent] underwent his spinal surgeries. It is hard to believe that [petitioner] was completely ignorant to the severity of [respondent's] surgeries and/or injuries. A reasonable person could infer that the level of severity could rise to a medical malpractice suit, or at least question whether a malpractice suit was warranted; it is this Court's opinion that [petitioner] was not completely blind to the possibility of this case. Given [respondent's] acknowledgment of his injury to [petitioner], it is also this Court's opinion that he did not intend to conceal or hide this from her either."

Accordingly, the trial court dismissed petitioner's petition for allocation of the undisclosed marital asset.

¶ 13    Petitioner now appeals the trial court's dismissal of her petition for allocation. She asks us to reverse the trial court's order and remand the case for further proceedings on her petition.

¶ 14                                  ANALYSIS

¶ 15    Petitioner argues that the trial court erred when it dismissed her petition for allocation of

1-24-1295

an undisclosed marital asset.[1] We review the dismissal of a pleading *de novo. Sandholm v. Kuecker,* 2012 IL 111443, ¶ 55.

¶ 16    Respondent's motion to dismiss was brought pursuant to the section of the Code of Civil Procedure that allows a party to file a combined motion directed at a pleading. 735 ILCS 5/2-619.1 (West 2020). Respondent interposed arguments for involuntary dismissal under both section 2-615 and section 2-619 of the Code of Civil Procedure.

¶ 17    A section 2-615 motion attacks the sufficiency of a complaint and raises the question of whether a complaint states a cause of action upon which relief can be granted. *Fox v. Seiden,* 382 Ill. App. 3d 288, 294 (2008). All well-pleaded facts must be taken as true, and any inferences should be drawn in favor of the non-movant. 735 ILCS 5/2–615 (West 2020); *In re County Treasurer & Ex-Officio County Collector of Cook County*, 386 Ill. App. 3d 906, 908 (2008). Plaintiffs are not required to prove their case at the pleading stage; they are merely required to allege sufficient facts to state all elements that are necessary to constitute each cause of action in their complaint. *Visvardis v. Eric P. Ferleger, P.C.,* 375 Ill. App. 3d 719, 724 (2007). A section 2-615 motion to dismiss should not be granted unless no set of facts could be proved that would entitle the plaintiff to relief. *Beacham v. Walker,* 231 Ill. 2d 51, 58 (2008).

¶ 18    A section 2-619 motion to dismiss admits the legal sufficiency of the complaint. 735 ILCS 5/2-619 (West 2020). The purpose of a section 2-619 motion to dismiss is to dispose of

---

[1] In the trial court, respondent argued that his medical malpractice claim was not a marital asset and, therefore, was not subject to the terms of the settlement agreement. The trial court ruled against respondent on this point, primarily relying on our decision in *In re Marriage of Rivera and Sanders-Rivera,* 2016 IL App (1st) 160552. On appeal, respondent expressly disclaims any challenge to the trial court's ruling on the character of the medical malpractice claim as a marital asset, and he focuses his arguments solely on other issues. Accordingly, for purposes of this appeal, we accept that respondent's medical malpractice claim was a marital asset and is subject to the parties' settlement agreement.

issues of law and easily proved issues of fact at the outset of the litigation. *Henry v. Gallagher*, 383 Ill. App. 3d 901, 903 (2008). Although a section 2-619 motion to dismiss admits the legal sufficiency of a complaint, it raises defects, defenses, or some other affirmative matter appearing on the face of the complaint or established by external submissions, which defeat the plaintiff's claim. *Ball v. County of Cook,* 385 Ill. App. 3d 103, 107 (2008).

¶ 19    Petitioner argues that the trial court erred in its interpretation of the parties' marital settlement agreement. She contends that the undisclosed asset provision in the agreement is controlling here and that the trial court misconstrued the settlement agreement when it found the release and waiver provisions to be determinative.

¶ 20    General rules of contract interpretation apply to marital settlement agreements. *In re Marriage of Sweders*, 296 Ill. App. 3d 919, 922 (1998). In other words, a marital settlement agreement is interpreted in the same manner as any other contract. *Blum v. Koster*, 235 Ill. 2d 21, 32 (2009). The interpretation of a marital settlement agreement, like any other contract, is done as a matter of law and is, therefore, subject to *de novo* review on appeal. *Id*. at 33.

¶ 21    The primary goal of contract interpretation is to give effect to the intent of the parties. *In re Marriage of Schurtz*, 382 Ill. App. 3d 1123, 1125 (2008). In determining the intent of the parties, a court must consider the contract document as a whole and not focus on isolated portions of the document. *Gallagher v. Lenart*, 226 Ill. 2d 208, 233 (2007). A marital settlement agreement should be given a fair and reasonable interpretation based upon all of its language and provisions. *In re Marriage of Kehoe*, 2012 IL App (1st) 110644, ¶ 18. If the language of a contract is clear and unambiguous, the intent of the parties must be determined solely from the language of the contract document itself, which should be given its plain and ordinary meaning, and the contract should be enforced as written. *Schurtz*, 382 Ill. App. 3d at 1125.

¶ 22     In reviewing the contract as a whole and determining the parties' intent from the language therein, we conclude that the parties were required to formally disclose in the settlement agreement any asset the party owned. The parties do not contest the court's finding that the medical negligence cause of action is a marital asset and we agree with the trial court's finding. See *In re Marriage of Rivera and Sanders Rivera*, 2016 IL App (1st) 160552. Accordingly, under any reasonable interpretation of the agreement, respondent was required to disclose his medical negligence claim in the settlement agreement.

¶ 23     Respondent affirmatively represented in the settlement agreement that all his assets had been disclosed before the parties had reached an agreement, even though the medical negligence claim was not disclosed.

> "[The party] warrants and represents that all assets, property, investments and financial accounts in which [the party] currently owns and/or has an interest are disclosed and identified in this Agreement and agrees that [the party's] acceptance of the property set forth in this Agreement represents a full and final settlement of any claims [the party] may have in and to any of the property, either marital or non-marital, now owned or hereinafter acquired by [the other party], whether real, personal or mixed."

It was a fundamental and material precondition of the agreement that all assets be disclosed, and the parties' respective representations of this fact formed the basis of their agreement.

¶ 24     The second part of the above provision, that the agreement represents a full and final settlement of claims between the parties, becomes meaningless if the first part, that all assets have been disclosed, is not satisfied. The full and final settlement referenced in the latter part of that provision required each party to accept the property that had been set forth in the agreement

as it was disclosed and identified. The releases and waivers contained later in the agreement are all premised on the idea that, with all assets having been disclosed, the parties have reached an agreement to fully and finally settle their rights and obligations with regard to property and, thereafter, dissolve the marriage. If there is a material asset that remains undisclosed or hidden, as here, it undercuts the entire foundation of the agreement. See *In re Marriage of Gurin*, 212 Ill. App. 3d 806, 813-15 (1991) (a husband's representation that he was unemployed during settlement negotiations despite his arrangement with his employer to begin working shortly after the representation was made justified setting aside the settlement agreement); see also *In re Marriage of Reines*, 184 Ill. App. 3d 392, 402 (1989) (the respondent's failure to fully disclose his assets made the judgment of dissolution unconscionable); *In re Marriage of Burch*, 205 Ill. App. 3d 1082, 1096 (1990) (if a party shielded certain marital assets from the other party, and thus prevented the other party from making an informed decision about whether to enter into the property settlement, the judgment of dissolution should be vacated).

¶ 25     Moreover, we construe contracts such that no terms are rendered meaningless or superfluous. *Salce v. Saracco*, 409 Ill. App. 3d 977, 982 (2011); *In re Estate of Tacher*, 2024 IL App (1st) 231016, ¶ 16. In this case, the undisclosed asset provision provides that if any asset is not disclosed and discovered later, the other party is entitled to half of the asset. Petitioner claims that this provision takes precedence over any waiver provisions contained in the agreement because the undisclosed asset provision contains strengthening language. The provision states that it applies "notwithstanding any other provisions of this agreement."

¶ 26     The term "notwithstanding" means that the provisions following the term "apply no matter what the other clauses, terms or conditions in the [contract] might otherwise provide." *Board of Education of Maine Township High School District No. 207 v. International Insurance*

*Co.*, 344 Ill. App. 3d 106, 114 (2003). The undisclosed asset provision states that "[n]otwithstanding any other provisions of this agreement, if either party has failed to disclose any assets or properties, which is later uncovered, the parties agree that the other party will be entitled to 50% of the hidden asset property." Applying the meaning of the term "notwithstanding," the undisclosed asset provision dictates that regardless of any waivers petitioner might have generally made by assenting to the agreement, if respondent failed to disclose any assets, petitioner is entitled to 50% of the hidden asset property.

¶ 27    Respondent argued, and the trial court found, that petitioner waived any claims under the agreement. However, in the final clause of that provision, the parties agreed that the release and waiver provision could not be construed as a waiver of each party's obligation to comply with the express provisions of the agreement. The trial court's interpretation charged petitioner with having waived respondent's obligation to comply with the express terms of the agreement. The mutual release provision itself prohibits such a construction of the agreement.

¶ 28    The release clauses relied upon by the trial court provide that they apply "except as otherwise provided herein." This limiting language on the release and waiver provisions prove that the parties intended the other express requirements of the agreement to supersede the release clauses. Thus, petitioner could be found to have waived all her claims against respondent by executing the agreement and settling, *except that the agreement otherwise provided* that all assets must be disclosed and the failure to do so results in an equal division of that asset.

¶ 29    Respondent does not address the issues of contract interpretation in his brief on appeal. Instead, respondent's brief is almost wholly dedicated to arguing that petitioner was aware of respondent's injuries. However, that argument misses the determinative point. It is undisputed that petitioner knew about respondent's injuries from the gunshot wound. The issue is whether

respondent disclosed he suffered injuries *caused by medical negligence*. There is no support in the record for such a definitive conclusion. In fact, petitioner specifically alleged in her verified petition—an allegation we must take as true for purposes of evaluating a motion to dismiss—that "[w]hile [she] was aware of [respondent's] underlying injuries, at no point during the parties' marriage did he ever disclose the existence of a medical malpractice claim." Respondent meanwhile did not attach any evidence to his motion to dismiss, nor does he now point to any evidence elsewhere in the record, that demonstrates petitioner knew about the existence of any medical malpractice before executing the settlement agreement. We find that the trial court not only failed to give proper regard to the disclosure provisions of the settlement agreement, the court also erred when it improperly resolved a disputed question of fact and impermissibly drew inferences against petitioner, despite her being the non-movant to a motion to dismiss. Findings on disputed questions of material fact are not to be made in resolving a motion to dismiss. *Gilbert Bros. v. Gilbert*, 258 Ill. App. 3d 395, 397-98 (1994); *In re Marriage of Vaugh*, 403 Ill. App. 3d 830, 836 (2010).

¶ 30    Like respondent here, the trial court also conflated petitioner's knowledge about respondent's injuries from the gunshot wound with knowledge of his injuries from medical malpractice, but the two sources of injury are distinct, and the distinction is paramount to whether petitioner may be entitled to relief.

¶ 31    The undisclosed asset provision in the parties marital settlement agreement provides that "if either party *has failed to disclose* any assets" the other party will be entitled to 50% of the hidden asset. The undisclosed asset provision is not couched in terms of what a party knew or should have known with regard to an undisclosed asset, but rather what the party actually disclosed. A cause of action should not be dismissed under either section of the Code of Civil

Procedure authorizing the dismissal of a claim unless it is clearly apparent that no set of facts can be proved that would entitle the plaintiff to relief (*Pooh–Bah Enterprises, Inc. v. County of Cook,* 232 Ill. 2d 463, 473 (2009) (section 2-615 motion); *Feltmeier v. Feltmeier,* 207 Ill. 2d 263, 277-78 (2003) (section 2-619 motion)). Respondent failed to meet his burden of demonstrating that petitioner could not be entitled to any relief.

¶ 32     We conclude that respondent was not entitled to the dismissal of petitioner's claim for the allocation of an undisclosed asset. The marital settlement agreement does not foreclose petitioner's claim as a matter of law, as the release and waiver provisions do not apply to bar petitioner's claim.

¶ 33                                CONCLUSION

¶ 34     Accordingly, we reverse, and we remand the case for further proceedings.

¶ 35     Reversed and remanded.