2022 IL App (1st) 210871-U

FIFTH DIVISION
May 27, 2022

No. 1-21-0871

**NOTICE**: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | |
|---|---|
| *In re* MARRIAGE OF TODD HANSEN, | ) Appeal from the Circuit Court ) of Cook County. ) |
|     Petitioner-Appellant, | ) ) |
|     v. | ) No. 12 D 11410 ) |
| KYLE HANSEN, | ) Honorable Raul Vega and ) Daniel A. Trevino, |
|     Respondent-Appellee. | ) Judges, presiding. |

_____

PRESIDING JUSTICE DELORT delivered the judgment of the court.
Justices Cunningham and Connors concurred in the judgment.

**ORDER**

*Held*: We affirm the circuit court's order resolving outstanding maintenance and child support payment issues, and reject the petitioner's claim of judicial bias. This court has no jurisdiction to consider the appeal of the circuit court's attorney fee order because that order did contain a finding under Illinois Supreme Court Rule 304(a) making the order final and appealable.

¶ 1    This appeal arises from divorce proceedings between petitioner Todd Hansen and respondent Kyle Hansen. The circuit court ordered Kyle to reimburse Todd for overpayment of

maintenance. The parties disputed the specific amount owed, with Kyle arguing that the total amount should be offset by Todd's alleged failure to meet his child support obligations. After a bench trial on that issue, the court found that Kyle owed Todd $6,934. In separate post-judgment proceedings, the circuit court denied Todd's petition for attorney fees related to his petition to terminate maintenance. Todd appeals both orders, arguing that the court misinterpreted the parties' marital settlement agreement (MSA), miscalculated his child support obligations, and was biased against him. We affirm in part and dismiss in part.

¶ 2                                     BACKGROUND

¶ 3      Todd and Kyle were married in 1996. They had three children, one born in 1999 and twins born in 2004. In 2012, Todd filed a petition for dissolution of marriage. On March 26, 2013, the circuit court entered a judgment for dissolution of marriage, which incorporated the MSA. Over the next several years, the parties returned to the court constantly, litigating over twenty post-judgment petitions and motions, some of which are the subject of this appeal.

¶ 4      Several provisions of the MSA are relevant to the issues before us. Section 4.1 of the MSA provided that Todd would pay Kyle "as a base amount of unallocated family support, a sum equivalent to Forty-Three (43%) percent of his gross monthly draw or salary" from his company O'Malley Hansen Communications, LLC (OHC). The section also stated that "Todd's current monthly draw is $20,000; therefore, he shall pay to Kyle the sum of $8,600 per month" starting September 1, 2012, and continuing until a "termination event" occurred, as defined in Section 4.8 of MSA. Section 4.2 further required Todd to pay 43% of his "gross quarterly distributions from OHC." Additionally, Section 4.6 provided in relevant part that Todd owed Kyle $8,600 monthly in unallocated family support at a "minimum," however, that "sum may be greater or lesser than

43% of Todd's gross draw in any given year," and accordingly, upon review of Todd and Kyle's tax returns for a given year, Todd would pay Kyle any excess due in the next year.

¶ 5    Section 4.8 of the MSA provided that Todd's obligation to pay unallocated family support would terminate upon the first of the following events to happen: (1) Todd or Kyle's death, (2) Kyle's remarriage, (3) Kyle's cohabitation, or (4) completion of 84 monthly payments, starting September 1, 2012.

¶ 6    Section 4.11 of the MSA provided that "emancipation of the children shall not constitute a substantial change of circumstances for the purpose of modifying either the maintenance award or the unallocated family support award."

¶ 7    Section 4.16, entitled "Child Support," reads:

> "Prior to the termination of unallocated family child support[1], the parties shall confer and attempt to determine by agreement appropriate amounts or percentages for child support upon the termination of unallocated family child support. If an agreement is reached the parties shall document said agreement by appropriate agreed court order. In the event that no agreement is reached then child support shall be ordered by a court of competent jurisdiction following hearing on appropriate petition to determine appropriate amounts or percentages for child support. Until such time as a determination is made or an agreed order is entered, the parties agree that Todd shall pay to Kyle 28% of his net draw or salary based upon Todd's draw or salary in the previous calendar year."

---

[1] We note that Section 4.16 uses the term "unallocated family child support," but the parties do not dispute that this term is synonymous with the term "unallocated family support" used in other sections of the MSA.

¶ 8    On November 16, 2017, Todd filed a petition to terminate maintenance, arguing that Kyle had been cohabitating with another man since January 1, 2016. On August 21, 2019, the circuit court granted Todd's petition, terminated maintenance effective to January 2016, and ordered that "Kyle shall reimburse Todd for all of the maintenance she received from January, 2016." The court further noted that it made "no ruling on what Todd's child support payments should have been or should be as no petition for child support was filed or evidence presented on that issue." On January 22, 2020, the circuit court denied Todd's petition for attorney fees related to his petition to terminate maintenance. The January 22, 2020 order contained no findings of immediate appealability pursuant to Illinois Supreme Court Rule 304(a).

¶ 9    On January 7, 2020, Kyle filed a petition for rule to show cause regarding child support, which referred to Section 4.16 of the MSA. The petition only requested that the court hold Todd in contempt for not paying child support in December 2019 or January 2020. On February 4, 2020, Todd filed his own petition to determine child support.

¶ 10    On March 23, 2020, Kyle responded to Todd's petition to determine child support, arguing that the child support determination should be made "based on Todd's failure to abide by paragraph 4.16 of the parties' MSA." Kyle asked that the court order Todd to "pay retroactive child support for the period of time he utilized self-help and did not pay in accordance with the parties' MSA."

¶ 11    On May 19, 2020, Todd filed a petition for a rule to show cause, arguing the circuit court should hold Kyle in contempt for not reimbursing him pursuant to the August 21, 2019 order. Todd alleged that he paid $216,855 in "unallocated maintenance" from January 1, 2016 to November 30, 2017, and the August 21, 2019 order required Kyle to reimburse him for "all unallocated support paid" in that period. Kyle responded, arguing that the court did not order her to reimburse Todd for all "unallocated support," but rather for maintenance alone. She continued that the

maintenance reimbursement amount should "be offset by the child support payments required by paragraph 4.16 of the [MSA] that Todd has failed to pay in full since December 2017."

¶ 12    On July 13, 2020, Kyle filed a petition to enforce the MSA, requesting the circuit court to order Todd to pay 28% of his "net income" from January 1, 2016 until such time as the court adjudicated child support. Todd moved to dismiss the petition, arguing that the judgment for dissolution of marriage "incorporated no terms or provisions establishing any specific obligations of child support for either party." Todd characterized Kyle's filing as "nothing more than a petition for retroactive child support," which he contended was improper under Illinois law pursuant to *In re Marriage of Petersen*, 2011 IL 110984. In her response to the motion to dismiss, Kyle argued her petition sought enforcement, not modification, of Todd's child support obligations under the MSA, and thus *Petersen* did not apply. The court denied the motion to dismiss.

¶ 13    Todd then responded to Kyle's petition to enforce judgment, arguing that, "Under Illinois Law, this court's statutory and legal authority is limited to the setting of child support in accordance" with section 505 of the Illinois Marriage and Dissolution of Marriage Act (Act) (750 ILCS 5/505 (West 2020)), dating to "the filing of Todd's Petition to Set Child Support on February 4, 2020."

¶ 14    On December 11, 2020, Todd filed a petition to modify the parenting plan. In relevant part, the petition stated that an "estrangement" between Kyle and Levi resulted in Todd caring for Levi exclusively since March 2020. Todd requested an order to "memorialize" this new parenting schedule "in consideration of the pending child support litigation" and Levi's best interests.

¶ 15    The circuit court conducted a trial on May 4, 2021, regarding four pending matters: (1) Kyle's January 7, 2020 petition for rule to show cause; (2) Todd's February 4, 2020 petition to determine child support; (3) Todd's May 19, 2020 petition for rule to show cause, and (4) Kyle's

July 13, 2020 petition to enforce judgment. In her trial brief, Kyle argued that the MSA was not ambiguous with respect to Todd's obligation to pay child support pursuant to Section 4.16 when any of the four termination events listed in Section 4.8, including cohabitation, occurred. Based on her accounting expert Robert Lloyd's calculations, she owed Todd $6,934 for the years 2016 to 2019 after offsetting her maintenance reimbursement obligations by Todd's child support underpayments.

¶ 16    Before trial, Kyle and Todd stipulated to the following facts: (1) Todd's "K-1 income" since 2016 was: $310,194 in 2016; $303,294 in 2017; $377,699 in 2018; and $332,579 in 2019; (2) Todd paid Kyle $216,855 from January 1, 2016 to November 30, 2017 in "unallocated support"; (3) Todd paid Kyle $2,919 a month from December 2017 to May 2018, and $2,520 a month from June 2018 to November 2019; and (4) Todd did not pay child support in 2020.

¶ 17    At trial, Kyle testified that she participated in the MSA negotiations, and her intent respecting Sections 4.8 and 4.16 was "to protect me and ensure I would still get child support and identify how much that child support would be" if one of the four termination events occurred. She believed that if unallocated support terminated via cohabitation, Todd's 43% unallocated family support payment "would change to child support at 28% of Todd's previous year's income."

¶ 18    On cross-examination, Kyle acknowledged that she did not file a child support petition before 2020, but did not agree that Todd had no obligation to pay child support pursuant to Section 4.16 until either she or Todd filed a child support petition. She denied that she contemplated Section 4.16 would only apply after Tatum became emancipated, but assumed the MSA included the 28% term in Section 4.16 "because it would be based on at the time the child support for three kids was 32 percent and two children was 28 percent."

¶ 19    Kyle's attorney called Todd in Kyle's case-in-chief. Todd testified that his schedule K-1 forms reflected distribution totals of $305,312 in 2015 and $312,308 in 2020. His monthly draw varied between $15,000 and $20,000, with an annual draw of $180,000 starting "around 2017, 2018." In 2020, he received "a $20,000 draw, but *** withdrew a significant amount of money *** for taxes," which reduced his "distribution down from 20 to 15." He did not pay Kyle 28% of his net income in 2018 or from January 2019 to September 2019, and believed he did owe Kyle 28% pursuant to Section 4.16 of the MSA until the "maintenance period ended" in September 2019.

¶ 20    On cross-examination, Todd testified that during the MSA negotiations, neither party discussed the possibility that Section 4.16 would apply if unallocated family support terminated before 2019. On redirect, Todd acknowledged he made child support payments in 2018 and 2019 before either he or Kyle filed a child support petition, despite his belief he had no obligation to do so pursuant to Section 4.16.

¶ 21    Lloyd testified as an expert in accounting. He prepared an analysis of Todd's child support obligations, which Kyle offered into evidence as Exhibit 24.[2] In Lloyd's opinion, after offsetting Todd's overpayments to Kyle in 2016 and 2017 with his underpayments in 2018 and 2019, Kyle owed Todd $6,934.

¶ 22    In closing, Todd argued that Section 4.16 did not apply, and that under the appropriate statutory framework, his outstanding child support obligation for 2016 and 2017 totaled $53,916, so that Kyle owed him $162,939 in maintenance reimbursement. Additionally, Todd disputed he

---

[2] Exhibit 24 is not included in the record on appeal, though the record does contain a spreadsheet prepared by Lloyd.

owed any "true-up" amounts, and further argued the circuit court "did not have jurisdiction to set child support" until February 2020.

¶ 23    On July 9, 2021, the circuit court granted Kyle's petition to enforce judgment, and found that Kyle owed Todd $6,934 in maintenance reimbursement relating to the years 2016 to 2019, relying on Lloyd's testimony in doing so, and denied Todd's petition for rule to show cause. In so ruling, the court explained that the MSA was not ambiguous that Section 4.16 applied to termination of unallocated family support by cohabitation, and thus Todd owed child support at 28% of his net draw from January 1, 2016 to February 2020. The court also granted Todd's petition regarding child support, and established Todd's child support obligations for 2020 and moving forward. Finally, the order stated: "There is no just reason for delaying enforcement of or appeal of this order." Todd then filed this appeal on July 26, 2021, appealing the circuit court's orders of January 22, 2020, and July 9, 2021.

¶ 24                                    ANALYSIS

¶ 25    Before addressing the merits of this appeal, we must first consider our jurisdiction. Todd's brief simply declares that this court has jurisdiction over his appeal because the orders he is appealing were final orders under Illinois Supreme Court Rules 301 (eff. Feb. 1, 1994) and 303 (eff. July 1, 2017). After review of the briefs and record, this court issued an order noting that Todd's jurisdictional statement was almost certainly incorrect or incomplete, because it failed to address the over twenty post-judgment motions and petitions which the parties had filed, each of which would have a potential effect on our jurisdiction. In the order, we cited *In re Marriage of Crecos*, 2021 IL 126192, in which our supreme court explained that "for purposes of appellate jurisdiction, unrelated postdissolution matters constitute separate claims, so that a final order

disposing of one of several claims may not be appealed without a Rule 304(a) finding." *Id.* ¶ 45. We directed Todd to file a supplemental jurisdictional statement.

¶ 26    In his supplemental jurisdictional statement, Todd provided information regarding the termination or closure of each of the post-judgment petitions and orders, whether by being granted, denied, withdrawn, "abandoned," or dismissed. In particular, Todd argued that we have jurisdiction over his appeal of the January 22, 2020 order regarding his attorney fees claim because the December 11, 2020 petition, which appeared to be still pending when that order was entered, had been "Uncontested/Abandoned."

¶ 27    On appeal, Todd challenges (1) the court's January 22, 2020 denial of his motion for attorney fees arising from his petition to terminate maintenance, and (2) the court's July 9, 2021 determination of the amount of maintenance reimbursement which Kyle owed him.

¶ 28    Contrary to Todd's assertion in his supplemental jurisdictional statement, nothing in the record shows that the December 11, 2020 petition to modify parenting time was ever resolved. Simply characterizing it as "abandoned" is not sufficient, because without a circuit court order specifically resolving it, it was still pending when Todd filed this appeal. Accordingly, because at least one postdissolution petition remained pending in the circuit court, none of the post-judgment orders were appealable unless the order contained an express finding pursuant to Illinois Supreme Court Rule 304(a) that there was no just reason to delay enforcement or appeal of the order. Ill. S. Ct. R. 304(a) (eff. March 8, 2016); see also *In re Marriage of Crecos*, 2021 IL 126192, ¶¶ 44-45.

¶ 29    The circuit court's July 9, 2021 order on Todd's child support obligations contained a Rule 304(a) finding, so it was appealable. However, the January 22, 2020 order regarding his attorney fees claim did not contain such a finding. Therefore, we only have jurisdiction to consider claims arising from the July 9, 2021 order. *Id.*

¶ 30    Kyle also argues preliminarily that Todd's claims should be dismissed because his brief did not comply with the Illinois Supreme Court Rules. She contends that Todd's statement of facts and argument section violated Rule 341, and that he violated Rule 342 by not including an appendix with his opening brief, among other violations. See Ill. S. Ct. R. 341(h)(6), (7) (eff. Oct. 1, 2020); Ill. S. Ct. R. 342 (eff. Oct. 1, 2019).

¶ 31    Supreme court rules are not "mere suggestions," and violations thereof may constitute grounds for dismissal. *North Community Bank v. 1701 South Park Avenue, LLC*, 2015 IL App (1st) 133672, ¶ 14. While we acknowledge the deficiencies in Todd's brief which Kyle points out, we find that the briefs of the parties, read together, are sufficient to permit substantive consideration of Todd's claims, and we therefore decline to dismiss the appeal for violation of Rules 341 and 342. *Gillard v. Northwestern Memorial Hospital*, 2019 IL App (1st) 182348, ¶ 48.

¶ 32    Todd first argues that the circuit court erred by applying Section 4.16 of the MSA when it terminated unallocated family support because of Kyle's cohabitation with another man. He further argues that because no child support petition was pending in 2018 and 2019, the court had no authority to establish his child support obligations in those years, as such an act would constitute improper retroactive modification of his obligations. Kyle responds that the court correctly ruled that Section 4.16 applied to termination of unallocated family support by cohabitation.

¶ 33    To address this claim, we must interpret provisions of the MSA, which was incorporated into the judgment of dissolution of marriage. We consider those documents together as a single agreement. See *In re Marriage of Farrell and Howe*, 2017 IL App (1st) 170611, ¶ 12. We review marital settlement agreements using the rules of contract interpretation. *Id.* We must construe a contract to give effect to the parties' purpose and intent at the time of agreement. *In re Marriage of Schurtz*, 382 Ill. App. 3d 1123, 1125 (2008). "If the terms of the agreement are unambiguous,

we must give effect to that language." *In re Marriage of Shulga*, 2019 IL App (1st) 182028, ¶ 23. If a term is ambiguous, however, the reviewing court may consider parol evidence to determine the parties' intent. *Id.* "A contract must be construed as a whole, viewing each provision in light of the other provisions." *Thompson v. Gordon*, 241 Ill. 2d 428, 441 (2011). Where an existing judgment has a child support provision, any modification of that provision can only apply "to installments accruing subsequent to due notice by the moving party of the filing of the motion for modification." 750 ILCS 5/510(a) (West 2020). We review the circuit court's interpretation of an MSA *de novo*. *Shulga*, 2019 IL App (1st) 182028, ¶ 23.

¶ 34     Section 4.16 of the MSA provides that Todd and Kyle were to negotiate an agreement on the parties' child support obligations before the "termination" of unallocated family support. If they did not do so, the circuit court, "following hearing on appropriate petition," would determine those obligations. The section concludes, "Until such time as a determination is made or an agreed order is entered, the parties agree that Todd shall pay to Kyle 28% of his net draw or salary based upon Todd's draw or salary in the previous calendar year."

¶ 35     We agree with the circuit court that Section 4.16 of the MSA is unambiguous and applies to any termination event, including cohabitation. The plain meaning of Section 4.16 is most evident from the provision's last sentence, which states that if no agreement or court order was in place before unallocated family support terminated, Todd would owe child support calculated at 28% of his net draw or salary from the *previous calendar year*. If Section 4.16 only applied beginning in September 2019, as Todd argues, then the previous calendar year would have been known by the parties at the time of agreement: 2018. Logically, the plain meaning of the provision is that it is not limited to a specific year, and thus encompasses termination prior to 2019.

¶ 36    Todd argues that Section 4.16 only applies after three conditions precedent are met: (1) he remits 84 monthly payments; (2) the September 1, 2019 date terminates unallocated family support; and (3) one of the parties files a petition for child support. The MSA lists no such requirements. Section 4.16 contains no language restricting the reference to "termination" to any one specific termination event listed in Section 4.8. Instead, Section 4.16 simply references "termination," which we must interpret alongside Section 4.1's mention of "termination event[s]" and Section 4.8's statement that unallocated family support "shall terminate" when one of four events occurs. *Thompson*, 241 Ill. 2d at 441 (an MSA must be read as a whole and its provisions interpreted in conjunction with each other). Construing these provisions together, and in the absence of any language in the MSA supporting Todd's interpretation, we find that "termination" as referenced in Section 4.16 of the MSA aligns with the term "termination event" language in Section 4.1 and the list of four events that "terminate" unallocated family support in Section 4.8.[3]

¶ 37    Todd also argues that Section 4.16 should not apply to pre-September 2019 events because it states that the parties are to confer before termination, suggesting that it implicitly contemplates a fixed end date. We disagree. Todd's interpretation ignores the fact that nothing in the MSA requires the parties to wait for any particular date before filing a child support petition with the court. Kyle or Todd could have filed a petition at any point after circuit the court entered the dissolution order.

¶ 38    Todd next argues that the circuit court erred in its interpretation of Section 4.11 of the MSA. That section states in relevant part that emancipation of the parties' children does not constitute a ground for modifying unallocated family support. Todd argues that shows the parties'

---

[3] We have already concluded that the MSA language at issue is unambiguous, and therefore we do not consider the parol evidence introduced at trial by both Todd and Kyle regarding their respective understanding of Section 4.16 during the MSA negotiations. See *Shulga*, 2019 IL App (1st) 182028, ¶ 23.

intent for the unallocated family support period to persist beyond the oldest child's expected emancipation in May 2018. This argument fails because another provision of the MSA, Section 4.8, expressly contemplates early termination of unallocated family support in case of either parties' death, or Kyle's remarriage or cohabitation, any of which could have occurred before May 2018. Thus, it is clear that Section 4.11 applied only if no termination event occurred before a child became emancipated, making the provision irrelevant here.

¶ 39    Based on our interpretation of Section 4.16, we also reject Todd's argument that the circuit court lacked authority to determine his child support obligations in 2018 and 2019. The MSA established Todd's duty to pay child support at 28% of his previous year's net draw or salary should unallocated family support terminate before a court entered a child support order. Accordingly, Kyle's July 13, 2020 petition to enforce judgment sought only enforcement, not modification, of a pre-existing obligation, rendering the modification rules from *Petersen* and Section 510(a) of the Act inapplicable.

¶ 40    Todd contends that Kyle admitted no child support obligation under Section 4.16 existed in 2018 and 2019 because her January 7, 2020 petition for a rule to show cause only claimed that Todd failed to pay child support in December 2019 and January 2020. This argument fails because the specifics of Kyle's requested relief in her January 7, 2020 petition are irrelevant. The circuit court's duty was to determine the child support obligations between the parties, and here, where the parties agreed to an MSA with terms governing those obligations, the court had no choice but to give effect to those terms. See *Shulga*, 2019 IL App (1st) 182028, ¶ 23.

¶ 41    Todd next claims that the circuit court abused its discretion by setting the amount of Todd's child support obligations for 2016 through 2019 in accordance with Lloyd's testimony and

opinions, which Todd argues were counter to Illinois law, the MSA terms, and the evidence at trial.

¶ 42    A circuit court's "findings regarding net income and the award of child support lie within the court's discretion and [the reviewing court] will not disturb its decision absent an abuse of discretion." *In re Marriage of Kampf*, 2014 IL App (1st) 120067, ¶ 41. A court abuses its discretion where its ruling is "arbitrary, fanciful, or unreasonable or no reasonable person would take the view of the trial court." *Id.*

¶ 43    The circuit court based its child support calculations here on Lloyd's expert testimony. In a bench trial, the court, "assesses the credibility of all witnesses, including expert witnesses, and determines the weight to be given their testimony." See *John Crane Inc. v. Allianz Underwriters Insurance Co.*, 2020 IL App (1st) 180223, ¶ 20. A reviewing court will not disturb these findings unless they are against the manifest weight of the evidence, that is, when the opposite conclusion is evident from the record. *Id.*

¶ 44    First, we note that this claim partially duplicates Todd's argument that Section 4.16 did not apply, which we resolved above, and fails for the same reasons.

¶ 45    Second, not all of the documents Lloyd reviewed to discern the appropriate figures and perform his calculations appear in the record on appeal. Most crucially, the record does not contain Todd's 2018 and 2019 schedule K-1 forms and tax returns, which were introduced as exhibits at trial. Todd failed to include the trial exhibits in the record on appeal. He attempted to rectify this by attaching most of the trial exhibits as an appendix to his reply brief, but Kyle moved to strike that appendix, and we took that motion with this case.

¶ 46    We now grant Kyle's motion, and strike the appendix attached to Todd's reply brief, for two reasons. First, this court can only consider material contained in an official record certified by

the clerk of the circuit court. See *Kensington's Wine Auctioneers and Brokers, Inc. v. John Hart Fine Wine, Ltd.*, 392 Ill. App. 3d 1, 14 (2009). Second, even if these exhibits had been included in a supplemental record duly certified by the clerk of the circuit court, this court would have denied any motion by Todd for leave to file that supplemental record at the end of briefing. Filing a motion for a supplemental record at that stage of briefing would not merely be untimely but also manifestly unfair, because it would permit Todd to submit a substantially new record containing material relevant to a crucial issue after briefing had been concluded. See *In re Marriage of Sharp*, 369 Ill. App. 3d 271, 275 (2006) (noting that it would be unfair to allow an amended record when doing so would be unfair to a party).

¶ 47    In the absence of these documents, our review is limited to the material included in the record on appeal and stipulated to at trial. Thus, to the extent Todd disputes the accuracy of the figures Lloyd used from 2018 and 2019 that were not encompassed by the stipulation, we must reject that argument because it was Todd's responsibility to provide a full record from which to review his claims. See *Foutch v. O'Bryant*, 99 Ill. 2d 389, 91-92 (1984). When an appellant fails to do so, as Todd does here, we must presume that the circuit court made its decision based on proper evidence and in conformity with the law. *Id.*

¶ 48    Outside of his objection to Lloyd's usage of Section 4.16, Todd also contends the circuit court erred by accepting Lloyd's trial testimony and opinions on Todd's income. The record shows that Todd and Lloyd offered conflicting testimony on this issue. Todd testified that sometime in 2017 or 2018, his draw reduced from $20,000 to $15,000 a month. He did not refer to any specific evidence to support this assertion. Lloyd testified that he used the stipulated amounts in Todd's schedule K-1 forms, the 2016 and 2017 copies of which are in the record, as the total income amount from which he calculated Todd's child support obligations. Lloyd further explained his

methodology of subtracting the tax attributable to Todd's income from the $240,000 base, multiplying that number by 28%, and then using that total, along with an annual true-up procedure to account for income in excess of $240,000 from the previous year, to arrive at Todd's total child support obligation for a given year.

¶ 49    Based on this record, we find that the circuit court did not abuse its discretion in its child support calculations for 2016 through 2019. The record, and the court's order in which it adopts Lloyd's calculations, shows that the circuit court considered the testimony of both parties, and found Lloyd's evidence regarding Todd's income level more credible than Todd's. We find no indication from the record, and Todd makes no affirmative showing, that this credibility determination was against the manifest weight of the evidence. Todd has not pointed to any instance when Lloyd used incorrect figures in his calculations, and none are apparent from the face of the documents in the record properly before us. Instead, Todd simply argues that his own testimony regarding his income was "uncontroverted," which is manifestly untrue from even a cursory review of the trial transcript.

¶ 50    Moreover, Todd's lone complaint regarding Lloyd's methodology is flawed. Todd contends that Lloyd's use of a "true-up" technique to account for income in excess of $240,000 in a given year was improper because the term "true-up" does not appear in Section 4.16. While the term "true-up" itself may not appear in the MSA, Section 4.6 provides that if Todd's income exceeded $240,000 in a given year, Todd also owed Kyle 43% of the amount by which it exceeded, payable the following year upon review of Todd's tax return. Lloyd's testimony and calculations demonstrates that he performed the calculation as detailed in Section 4.6, adjusting only to use 28% of net income post-January 2016 when unallocated family support terminated. Todd does not argue that this method led to invalid calculations, explain why the methodology was inappropriate

to determine his child support obligations, or even acknowledge the procedure described in Section 4.6 of the MSA. Accordingly, Todd fails to provide any valid basis for the circuit court to have rejected Lloyd's methodology, and we have no basis to set aside the court's finding on this review. See *Crane*, 2020 IL App (1st) 180223, ¶ 20.

¶ 51    In sum, we have no basis on which to overturn the circuit court's decision to credit Lloyd's testimony and opinions, and it follows that the court did not abuse its discretion in its calculations of Todd's child support obligations for 2016 through 2019. See *In re Marriage of Moorthy and Arjuna*, 2015 IL App (1st) 132077, ¶ 65 (finding no abuse of discretion in the circuit court's determination of a party's net income and child support obligations after it reviewed the evidence and determined the circuit court's "factual findings were not against the manifest weight of the evidence.").

¶ 52    Todd also argues, for the first time in his reply brief, that if the circuit court chose not to find Todd owed $53,916 total for 2016 and 2017, and thus Kyle owed Todd $162,939, the court could only then have used one of two other calculation methodologies to determine his child support obligations. It is well-established, however, that arguments that appear for the first time in a reply brief are forfeited, and we therefore will not consider this argument. See Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020) (Points not argued in an appellant's opening brief are "forfeited and shall not be raised in the reply brief").

¶ 53    Todd next claims that the order is flawed because the judge who entered it was biased against him.

¶ 54    In support, Todd points to certain language in the July 9, 2021 order that the judge took from the August 21, 2019 order. This language was favorable to Kyle. Todd contends this demonstrates the judge's underlying bias because the August 21, 2019 order, issued by a different

circuit court judge, was primarily unfavorable to Kyle. Todd further contends that the language betrays the judge's intent to limit the effects of the August 21, 2019 order by using the July 9, 2021 order to improperly offset Kyle's reimbursement obligations.

¶ 55    "A trial judge is presumed to be impartial, and the burden of overcoming this presumption rests on the party making the charge of prejudice." *Eychaner v. Gross*, 202 Ill. 2d 228, 280 (2002). An adverse ruling is insufficient to overcome the presumption; instead, the alleging party must show prejudicial conduct at trial and evidence of personal bias. *Id.* We review the question of whether the circuit judge's conduct requires reversal of the judgment *de novo*. See *People v. McLaurin*, 235 Ill. 2d 478, 485 (2009).

¶ 56    We find that Todd has utterly failed to rebut the presumption that the circuit court decided this matter impartially. The court's bases for the July 9, 2021 decision, as described in detail in the court's written order, appear to be thoroughly considered and in line with the evidence and testimony. The court's inclusion of the language sympathetic to Kyle's position regarding cohabitation does not appear to have influenced the court's ultimate conclusion regarding Todd's child support obligations in any significant, let alone improper, fashion. Outside of his argument regarding the cited language, Todd does not identify any other alleged prejudicial conduct or statements by the circuit judge in any other context, and thus we have no basis to find the second circuit court judge was biased against Todd. See *Eychaner*, 202 Ill. 2d at 280. We therefore reject this last contention of error.

¶ 57                                CONCLUSION

¶ 58    The circuit court properly found that Section 4.16 of the MSA applied to termination of unallocated family support by cohabitation, and it properly calculated Todd's child support obligations based on this finding and Lloyd's credible expert testimony. We therefore affirm the

court's July 9, 2021 order. We dismiss the appeal as to the January 22, 2020 order for lack of jurisdiction.

¶ 59    Affirmed in part; dismissed in part; motion granted.